In re HAMILTON.

Claim of McCURDY.

No. 4849.

District Court, W. D. Michigan, S. D.
March 30, 1937.

Travis, Merrick & Johnson, of Grand Rapids, Mich., for trustee in bankruptcy.

James T. McAllister, of Grand Rapids, Mich., for claimant.

RAYMOND, District Judge.

The sole question presented by the petition for review of the referee's order of February 20, 1937, is whether upon a petition for ascertainment of value of collateral filed by the trustee in bankruptcy under section 57h of the Bankruptcy Act (11 U.S.C.A. § 93 (h), the value shall be determined as of the date of filing the petition in bankruptcy or as of the date of filing the petition by the trustee.

The referee found upon sufficient evidence that the value of shares of stock in the Michigan Trust Company which had been pledged to the Grand Rapids Na-tional Bank as collateral was $30 per share at the date of filing the petition in bankruptcy and entered an order allowing the claim of the Grand Rapids National Bank as a general unsecured claim at the sum of $39,921.51 after crediting thereon the value of the stock, ascertained, on the basis indicated, at the sum of $34,800. In his petition for review, the receiver of the Grand Rapids National Bank asserts that the value of the stock at the date of hearing upon the petition for ascertainment of value was only $20 per share and that the deduction from the amount of petitioner's claim should have been the sum of only $23,200. It appears that at times during the pendency of the bankruptcy proceedings the value of the stock has been as low as $8.88 per share.

The petition in bankruptcy was filed March 24, 1932. The adjudication was April 11, 1932. At the date of bankruptcy, bankrupt was indebted to the Grand Rapids National Bank in the sum of $74,721.41. The only collateral security having value which was then held by the bank was 1,-160 shares of the Michigan Trust Company capital stock. The bank closed on February 11, 1933, and on September 25, 1933, a receiver of the bank was appointed. Its affairs since that date have been in liquidation under successive receivers. Considerable litigation (some of which is still pending in the circuit court of appeals) followed the filing of the petition in bankruptcy with the result that the estate has been kept open for nearly five years.

The question presented has not been clearly adjudicated. The trustee in bankruptcy, the officers of the bank during its solvency, or its successive receivers might have brought about a determination of value of collateral long prior to the date when the trustee filed petition for such ascertainment, namely, January 22, 1937, and in the usual case would have been compelled so to do. Those representing the bank have elected to hold the stock without sale, awaiting an expected increase in value.

Cases in which the secured creditor has elected to sell or to convert the security by repledging the same are not pertinent to the issue here. As here presented, the issue is between the rights of a secured creditor and those of the general creditors of bankrupt. Whatever may be the rule in other circumstances, it seems

clear that a secured creditor ought not to be permitted to delay for a period of five years to determine the value of securities, whether through failure to convert the same into money or by postponement of attempt at agreement, arbitration, compromise, or litigation as provided by section 57h of the Bankruptcy Act, and leave the unsecured creditors to bear the losses incident to such speculative enterprise. In the case of Sexton v. Dreyfus, 219 U.S. 339, 345, 31 S.Ct. 256, 257, 55 L.Ed. 244, it was said:

"If, under § 57 of the present act, the value of the security should be determined by agreement or arbitration, the time for fixing it naturally would be the date of the petition. At that moment the creditors acquire a right in rem against the assets. Chemical National Bank v. Armstrong, 8 C.C.A. 155, 59 F. 372, 378, 379, 28 L.R.A. 231; 16 U.S.App. 465; Merrill v. National Bank of Jacksonville, 173 U.S. 131, 140, 19 S.Ct. 360, 43 L.Ed. 640, 643. When there is delay in selling because of the hope of getting a higher price, it is more for the advantage of the secured creditor than of anyone else, as he takes the whole advance, and the others only benefit by a percentage, which does not seem a good reason for allowing him to prove for interest by indirection. Whenever the creditor proves, his security may be cut short. That is the necessarily possible result of bankruptcy. The rule under discussion fixes the moment in all cases at the date which the petition is filed; but beyond the fact of being compelled to realize his security and look for a new investment, there is no other invasion of the secured creditor's contract rights, and that invasion is the same in kind whatever moment may be fixed.

"It is suggested that the right of a creditor having security for two claims, one provable and the other unprovable, to marshal his security against the unprovable claim (see Hiscock v. Varick Bank, 206 U.S. 28, 37, 27 S.Ct. 681, 51 L.Ed. 945, 951), is inconsistent with the rule applied in this case. But that right is not affected by fixing a time for winding up, and the bankruptcy law does not touch securities otherwise than in this unavoidable particular."

In the case of In re O'Gara Coal Co., 12 F.(2d) 426, 46 A.L.R. 916, the Circuit Court of Appeals of the Seventh Circuit held that upon the filing of a secured claim, the security should be valued as of the date of filing the petition in bankruptcy.

No question arises in this case concerning the right of a secured creditor to delay a reasonable length of time in liquidating its securities and then attempting to establish his claim for the remainder, or concerning losses through negligence in failing promptly to exercise his rights [see In re Coates, Bennett & Reidenbach (D.C.) 8 F.(2d) 757], because here there has been no attempt at any time to liquidate. Throughout the period of several years, the creditor or its representatives have elected to speculate upon the possible increase in value of the security.

It is the view of the court that these authorities are persuasive in the present case and that in balancing the equities of the secured creditor against those of the unsecured creditors, the secured creditor may not be permitted to elect to hold his securities at the expense of the unsecured creditors.

An order will therefore be entered affirming the order entered by the referee.