This is an application by Louis A. Reilly, Commissioner of Banking and Insurance, for instructions relative to a number of matters with which he is confronted in the liquidation of The New Jersey Title Guarantee and Trust Company.
The commissioner took possession of the business and property of said Trust Company on February 14th, 1939, pursuant to the statute. This court assumed jurisdiction of the matter by an order made June 22d 1939. The Trust Company for many years prior to the time it was taken over by the commissioner issued certificates called "Guaranteed First Mortgage Participation Certificates" in various denominations. It assigned and transferred to the holder of such certificates an undivided share (in the amount of the certificate) in and to certain bonds and mortgages securing said certificates covering real estate in this state, which bonds and mortgages were owned by the Trust Company and held in special deposit by the trust department of said Trust Company. The certificates set forth their maturity date and carry interest at four per centum per annum. Among other things, the certificates provide that the Trust Company "guarantees the payment of the principal and interest of each, and all, of the `Guaranteed First Mortgage Participation Certificates,' issued, or to be issued by it." They also provide that the Trust Company "shall be entitled to all *Page 93 
installments of interest paid on said bonds and mortgages, in excess of such part thereof as is payable to the holder by virtue hereof." Another provision of the certificate is that the Trust Company "shall have the right, at any time, to add, withdraw and substitute bonds and mortgages, but the aggregate amount of mortgages in said special deposit shall at no time be less than the amount hereinbefore provided." The amount referred to is the aggregate amount of mortgages upon which the certificates were issued and which should equal at least ten per centum more than the amount of all certificates issued and outstanding. Another provision contained in the certificates is that the Trust Company "may be the owner, or pledgee, of this Certificate in the same manner as any third person without the extinguishment hereof and that the same is subject to re-issue."
At the time the commissioner took over the Trust Company the face value of the certificates outstanding amounted to $3,504,500. Of this amount the Trust Company claimed to be the owner of $74,500 worth of said certificates. The trust department of the Trust Company held in special deposit ninety mortgages upon which mortgages there was due the principal sum of $4,249,542.37. This amount was in excess of the ten per centum excess of the outstanding certificates.
The first question submitted is contained in paragraph 8-A-1 of the petition and is:
Are said certificates in reality primary obligations of The New Jersey Title Guarantee and Trust Company, or are they assignments or transfers of pro rata interests in the mortgages held in special deposit, with the guarantee constituting merely a secondary obligation of the bank?
I have carefully considered the form of the certificate annexed to the petition designated "Exhibit A." I have also considered the briefs submitted by the several counsel who appeared in this matter. Some of the briefs make allegations relative to the issuing of these certificates which do not appear in the records before me. I gather from the briefs of counsel that the Trust Company dealt with these certificates in a certain manner in its financial statements which may be of value in determining whether or not the certificates are primary *Page 94 
or secondary obligations of the Trust Company. I have, therefore, concluded that evidence should be submitted relative to the issuing of the certificates, the manner in which they were treated or considered by the Trust Company and in regard to other particulars for the purpose of disclosing the full situation relative to the certificates and their issuance. See In reSecurity Mortgage and Title Insurance Co., 124 N.J. Eq. 238.
The next question submitted is contained in paragraph 8-A-2 of the petition as follows:
If they are primary obligations, does the interest thereon, under the guarantee, cease as of February 14th, 1939?
As above mentioned, the certificates are secured by deposited mortgages which have a face value of ten per centum in excess of the amount of guaranteed certificates outstanding. It would naturally follow that if sufficient moneys are realized from the liquidation of these mortgages and recoveries on the bonds, the certificate holders would be entitled from the funds so collected to the payment of the certificates with interest at the rate provided in the certificates. See Hoover Steel Ball Co. v.Schaefer Ball Bearing Co., 90 N.J. Eq. 515; Ticonic NationalBank v. Sprague, 303 U.S. 406. If it develops that the certificates are primary obligations of the Trust Company, the certificate holders would then appear to be secured creditors. Under such a situation the bankruptcy rule would apply. The bankruptcy rule requires that a secured creditor must either waive his security and prove for the full amount of his debt or evaluate his security and prove for the difference. Butler v.Commonwealth Tobacco Co., 74 N.J. Eq. 423; Sexton v. Dreyfus,219 U.S. 339, 345. It makes no difference whether a secured creditor waives his security and files a claim for the full amount of his debt or evaluates his security and files a claim for the difference as far as allowance of interest is concerned. In both instances the claimant is entitled to interest on his claim only to the date the commissioner took possession of the Trust Company. The value of the underlying mortgages, in order to treat all claims equitably, should be determined as of the date of closing. In re O'Gara Coal Co. (1926), 4 Fed. Rep. (2)426; *Page 95 Chicago Title and Trust Co. v. Gardner, 271 U.S. 683; Sexton
v. Dreyfus, supra; In re Hamilton, 19 F. Supp. 333, 334.
The next question presented appears in paragraph 8-A-3 as follows:
If they are primary obligations, may the interest collected from the mortgages held in special deposit be applied, after deduction of necessary administration expenses, to the principal sum due holders thereof, or must it be paid to such holders as interest?
Equity requires that if the valuation of the securities as of February 14th, 1939, the date when the commissioner took possession of the Trust Company, discloses a deficiency, the securities belong to the certificate holders and they are entitled to all income on such securities from the date the commissioner took possession, subject, of course, to the payments of costs and expenses of administration.
The question raised under paragraph 8-B-1 is:
What are the rights of your petitioner with respect to the unassigned portions of the said bonds and mortgages, and with respect to the certificates aggregating $74,500 which he holds as successor to the rights of The New Jersey Title Guarantee and Trust Company?
If it develops that the certificates are primary obligations of the Trust Company, the $74,500 worth of certificates held in the name of the Trust Company on February 14th, 1939, were extinguished when purchased by it. Therefore, the Trust Company would not share pro rata with the other certificate holders in the liquidation of the deposited bonds and mortgages. The Trust Company would, however, be entitled to any surplus which might remain after the other certificate holders have been paid in full. Howell v. Bartlett, 124 N.J. Eq. 544; affirmed, 126 N.J. Eq. 315.
The next question appears in paragraph 8-C-1 and is:
Where interest collections exceed the amount necessary to pay the guaranteed rate, may petitioner retain such excess for the benefit of general creditors of The New Jersey Title Guarantee and Trust Company, or should it be applied on the principal sum due on the certificates? *Page 96 
This question is answered by the conclusions reached in 8-A-3 above. The commissioner is not entitled to retain any part of the income on the securities liquidated or collected since February 14th, 1939.
The question raised under paragraph 8-C-2 is:
What part of interest collections may petitioner retain to pay the necessary expenses and disbursements incidental to servicing and administering said bonds and mortgages, pending termination of the trust?
This question cannot be answered at present. The court is not in a position to estimate the costs and expenses.
The question raised under paragraph 8-D-1 is:
May petitioner continue to accept from such mortgagors interest at the reduced rate, or shall he insist upon interest being paid at the rate specified in the mortgage?
In cases where the reduced rate of interest is the result of a valid contract the commissioner must observe it. As to other cases he may apply to the court for instructions as the occasion arises.
The question raised under paragraph 8-D-2 is:
May petitioner grant reductions of interest rate to mortgagors to avoid default?
This question is answered by the conclusions reached in 8-D-1.
The question raised under paragraph 8-D-3 is:
May petitioner extend the maturity date of mortgages which are due and may fall due?
The commissioner should apply for instructions in each case.
The question raised under paragraph 8-E is:
Are such persons who rendered such services or furnished materials entitled to full and prior payment out of the funds which came into the possession of petitioner at the closing of the bank, but which were collected prior thereto, or have they merely general claims against the assets of The New Jersey Title Guarantee and Trust Company on a par with other general creditors?
Counsel for the certificate holders contends that the Trust Company, as mortgagee in possession of certain premises covered *Page 97 
by the mortgages underlying the certificates, was acting as trustee for the certificate holders and that the claims in question should be paid out of the rents of the respective properties. This appears to be fair and equitable. The commissioner will be so instructed. There is no evidence before this court which will justify instructions to the commissioner relative to the rights of claimants for labor performed or materials furnished on properties of the Trust Company which are not part of the securities underlying the mortgage participation certificates. The rights and interests of the several claimants to whom the above instructions apply should be established by proper proof.
The question raised under paragraph 8-G is:
May petitioner pay such arrearages of taxes out of interest collected and to be collected from all the mortgages held in special deposit?
The commissioner should apply to the court for instructions in each specific case.
The question raised under paragraph 8-H-1 is:
May petitioner exercise his discretion as to when to institute such foreclosure proceedings or shall he apply to this court in each instance, on notice to holders of mortgage participation certificates?
The commissioner should use his own best judgment in such cases. Delay caused by application to the court might prove detrimental to those in interest.
The question raised under paragraph 8-H-2 is:
In whose name shall foreclosure proceedings be brought?
Foreclosure proceedings should be brought in the name of "The New Jersey Title Guarantee and Trust Company, individually and as trustee for the holders of the mortgage participation certificates."
The question raised under paragraph 8-H-3 is:
Under what circumstances may petitioner accept from a mortgagor a deed to the property, and in whose name shall title be taken?
Each case must stand on its own facts and circumstances. The commissioner may apply to the court for instructions when such questions arise. No general instruction can govern *Page 98 
this. The title to all properties acquired by the Trust Company, whether by foreclosure or other conveyance, should be taken in the name of "The New Jersey Title Guarantee and Trust Company."
The question raised under paragraph 8-H-4 is:
In the event of a deficiency after foreclosure, may petitioner compromise such claim, and if so, under what circumstances?
Each case will depend upon the facts involved. The commissioner should apply to the court for instructions as occasion may arise.
The question raised under paragraph 8-H-5 is:
Out of what fund shall court costs, fees and expenses be paid in connection with such foreclosure proceedings?
The expenses in connection with foreclosure proceedings should be paid from the funds available in the mortgage pool.
The questions raised under paragraphs 8-1, 1-2-3 and 8-J, 1-2 are:
Do such mortgagors have a right to set off the amount of their deposits against their liabilities on their bonds and mortgages?
If so, is the amount of the deposit to be set off against interest on the mortgage, or against principal, or the sum of the two as of February 14th, 1939?
May petitioner claim the right of set off of the amount due by a mortgagor on a mortgage held in special deposit against a deposit of the mortgagor with The New Jersey Title Guarantee and Trust Company?
May such holders of mortgage participation certificates claim the right of set off under such circumstances, and if so, may they claim a set off for the face amount of such certificates or merely for such sum as shall represent an actual loss on such certificates after liquidation of all of the mortgages held in special deposit?
If such set off be allowed, is your petitioner subrogated to the rights of the certificate holder in the mortgages held in special deposit?
The court will not formulate general instructions with respect to set-offs above referred to. Each question of set-off must be considered on the surrounding facts and circumstances. *Page 99 
If the commissioner is in doubt relative to a set-off he should apply to the court for instructions.
The question raised under paragraph 9-1 is:
May petitioner, on the basis of independent appraisals which show the likelihood of a loss in any particular case, compromise with such holders of guaranteed mortgages as to the amount of such loss and allow a general claim therefor, upon such holders' release of the bank of its guarantee and the bank's release of its further rights in the mortgage?
This matter involves equities which affect the general creditors of the Trust Company. Proper judicial proceedings should be taken to determine the value of properties which underlie the guaranteed mortgages. Such proceedings should be on notice to all interested parties.
The question raised under paragraph 9-2 is:
In the event of foreclosure of such guaranteed mortgages, and competitive bidding at the sheriff's sale under foreclosure, how far may petitioner go in so far as his bidding is concerned?
No general rule can be formulated to cover this question. The commissioner should prior to the sale apply to the court for instructions upon proper notice to all interested parties.
The question raised under paragraph 10-1 is:
Does the fact that The New Jersey Title Guarantee and Trust Company is now in liquidation, invalidate such liens or do they remain in full force and effect?
The commissioner took possession of the assets under R.S.17:4-101 et seq. This statute does not invalidate the liens above referred to. The General Corporation Act, to which reference has been made by counsel (R.S. 14:1 et seq.), does not invalidate the liens referred to. The attorneys, therefore, who performed services prior to the closing of the Trust Company are entitled to the liens which they may have obtained under the Attorneys Lien Act.
The question raised under paragraph 10-2 is:
If such liens are not invalidated, and there was no specific contract with such attorneys and counsellors as to the amount of compensation to be paid them for their services, may petitioner exercise his judgment in paying or refusing to pay *Page 100 
bills as submitted by said attorneys and counsellors for said services?
The commissioner has power under the statute, referred to in the above paragraph, to allow claims. Under this statute he may compromise claims. The commissioner also has the privilege of applying to the court for further instructions and for the determination of the amount of any such lien. R.S. 17:4-106 and108.
The question raised under paragraphs 11, 12 and 13 are:
Attached hereto (petition) as Exhibit "B," and made a part hereof (petition) is a schedule of the mortgages held by the trust department of The New Jersey Title Guarantee and Trust Company, in special deposit, as alleged in paragraph 4 hereof. Said schedule indicates the status of said mortgages, 90 in number, as of July 15th, 1939. Petitioner alleges that because of the present general real estate market many years will elapse before said mortgages can be liquidated and the loss to the several certificate holders determined.
Petitioner charges that to delay the liquidation of The New Jersey Title Guarantee and Trust Company until such time as the loss to certificate holders is determined will greatly jeopardize the rights of depositors and other creditors of The New Jersey Title Guarantee and Trust Company and may, as well, jeopardize the rights of said certificate holders in so far as their claims against The New Jersey Title Guarantee and Trust Company on their guarantee is concerned.
Petitioner therefore charges that the best interests of all depositors and creditors as well as of the certificate holders will be best served by having the value of said mortgages appraised, under the supervision and direction of this court, as of February 14th, 1939, to the end that the deficiency, if any, resulting to certificate holders may be fixed and determined.
The study which the court has made of the situation relative to converting the underlying securities of the mortgage pool, leads to the conclusion that such liquidation will cover a long period. The rights of the certificate holders are the same as the rights of a creditor holding securities in the case of an insolvent corporation or of an insolvent estate. As *Page 101 
stated above, the bankruptcy rule is applied in cases of this nature. Butler v. Commonwealth Tobacco Co., supra. The rule requires that the certificate holder apply on the amount of his claim the value of his securities and prove for the difference. Under such circumstances the certificate holders will then become general creditors for the deficiency of their claims and interest thereon. Such interest is the same as the interest on all other general claims and terminates as of February 14th, 1939. TiconicNational Bank v. Sprague, supra. Counsel for some of the certificate holders contend that notwithstanding the fact that the certificates are primary obligations of the Trust Company the determination of the amount of any deficiency should be deferred until all the securities in the mortgage pool are liquidated. Such a course would not be equitable and particularly not to the general creditors. It would require the setting up of reserves on the many certificates for the full amount of the face value of the certificates together with interest to February 14th, 1939, at the rate of dividends paid to general creditors. Such a course would deprive general creditors of participating in a larger amount than would be realized if the claims of the certificate holders were reduced to the difference between the value of the securities in the pool and the amount due. It also appears that it would not be equitable to certificate holders because it would require the withholding of dividends from them out of general assets until the termination of the liquidation of all of the securities in the mortgage pool. As hereinbefore stated the determination of the value of the securities underlying the mortgage participation certificates as of February 14th, 1939, will result in a more equitable distribution of the assets, which are realized by the liquidation, among the general creditors and among the mortgage participation certificate holders. To postpone the determination of this would unnecessarily delay the liquidation.
The court, therefore, is of the opinion that appropriate steps should be taken to this end. *Page 102