Solicitors of the complainant filed a notice on November 8th, 1943, of an application "for an order for inspection pursuant to the prayer contained in the verified petition on file in this cause." This notice was directed to Mr. John P. Nugent and he acknowledged service of the same although he was not substituted as solicitor until November 15th, 1943.
On February 15th, 1939, complainants, holders of mortgage participation certificates issued by the New Jersey Title Guarantee and Trust Company, filed a verified bill of complaint. The object of the suit was to obtain a determination of the respective rights and shares of the certificate holders: to obtain discovery of the names, addresses and interests of all other certificate holders: to obtain a decree that defaults have occurred; and to have this court take over supervision and administration of the mortgage pool trust, and to have a trustee appointed, c.
The bill was filed with Vice-Chancellor Egan. He advised an order to show cause why this court should not take over the supervision of the trust and require the defendants to furnish lists of all certificate holders to the complainants. This order was returnable on February 20th, 1939, on which date the complainants presented an order of continuance postponing the matter until February 27th, 1939. On that day, the firm of Milton, McNulty Augelli appeared as solicitors of record for the defendants. They filed two affidavits in opposition to the application and a memorandum (which is part of the clerk's file), from which it appeared that the Commissioner contemplated submitting the trust to the jurisdiction of this court.
On April 11th, 1939, the defendants filed their answer, out of time but by consent of complainants' solicitors. Issue was joined on April 29th, 1939. No steps were taken to bring the matter on for final hearing.
On April 28th, 1941, complainants' solicitors served a notice upon Thomas F. Meaney, then counsel to the Commissioner, although the firm of Milton, McNulty Augelli were still the solicitors of record and remained so until November 15th, 1943, when Mr. Nugent was substituted in their place. *Page 331 
The notice of April 28th, 1941, is directed to Judge Meaney and he acknowledged service as the solicitor for the defendants. That notice recites that the complainants intend to apply for an order for inspection, pursuant to the prayers in the annexed verified petition, on May 5th, 1941. The notice and verified petition, however, were not filed until October 6th, 1941, and the matter was continued to that date. The status of the application for inspection and of the suit itself are the subjects of this opinion.
From the chronology, above set forth, it will be noted that the application for discovery was made in the first instance more than a year after issue had been joined. The petition recites: "* * * it is necessary for a proper determination of the issues involved * * * to determine whether there have been any acts of impropriety or maladministration in connection with the creation, operation and management of the mortgage pool trust." This refers to a time prior to the closing of the Title Company. The petition also alleges that before the Commissioner took over, "many of the mortgages in the mortgage pool were in default because of non-payment of interest * * * or taxes for a great number of years * * *," and that the trust assets were mismanaged by the Title Company for sometime prior to the closing. The affidavit annexed contains no affirmative assertions as to any specific acts of wrongdoing and reveals that the alleged facts therein recited are merely allegations of the affiants, who say that, "* * * it will be competent, relevant and material to the merits of the suit * * * to examine all of the records * * * to ascertain whether there have been any acts of impropriety or malfeasance in the creation, operation and management of the mortgage pool by the Trust Company to the end that such proceedings may be instituted as the circumstances and facts warrant." The petition and affidavit list fifteen mortgages alleged to be part of the assets of the mortgage pool and against which, it is said, that there were then arrearages of taxes or interest, or both, without, however, stating the source of the information.
The primary relief sought by the bill of complaint is to have this court take jurisdiction of that part of the trust estate which is referred to as the "mortgage pool." The bill *Page 332 
alleges that the Commissioner will not be a suitable trustee because of his duties relative to the administration of the general assets of the bank and that, therefore, he could not act as an impartial and disinterested trustee of the so-called "mortgage pool" assets.
The inspection of the records asked for would not assist the complainants in determining whether or not the Commissioner could act as a disinterested and impartial trustee. The application is, therefore, nothing more than an attempt to secure a roving commission, the object of which would be to attempt to ascertain the existence or non-existence of fraud, mismanagement or corruption on the part of those responsible for the management of the Title Company prior to the time when the Commissioner took over. Assuming that there was misconduct of the officers prior to that time, such fact would not be material or relevant to the question as to whether the Commissioner could act as a disinterested trustee.
As stated above, the bill of complaint was filed on February 15th, 1939, the day after the Commissioner took control of the Title Company. The following month the Commissioner petitioned this court to "take jurisdiction over the administration of the trust set forth in this petition." Among matters referred to in the petition are the guaranteed first mortgage participation certificates, the number of the holders and the face value of the certificates. An order to that effect was entered on June 22d 1939. See In the Matter of The New Jersey Title Guarantee andTrust Company, in Liquidation, Docket 124, page 164. The Prashkers, complainants here, were parties to that proceeding and were represented by the same solicitors, Messrs. Milberg 
Milberg. Subsequently the Commissioner petitioned this court for instructions relative to said trust and matters pertaining to the bank. I wrote an opinion dated March 26th, 1940. See In re NewJersey Title Guarantee and Trust Co., 130 N.J. Eq. 89. Many questions concerning the management of the "mortgage pool" are answered therein and the instructions therein given were later incorporated in an order of this court. The Prashkers were parties to that proceeding and were represented by the same solicitors. No appeals were taken from either of the above mentioned orders. *Page 333 
The disposition of the Commissioner's application for leave to submit the trust and the further proceedings on the petition for instructions, effectively disposed of the question sought to be litigated in this suit, and as a result, this suit has abated.
That favorable action on the petition filed by the Commissioner would result in an abatement of complainants' suit was recognized by Messrs. Milberg Milberg in their letter to me dated April 20th, 1939, wherein they state:
"The causes of action, the issues involved, the parties involved, and the relief sought in the first and second suits, in so far as the mortgage pool is concerned, are substantially the same, and thus, under well-established principles of law, an equitable abatement results. Nor is the situation altered under settled law because facts are alleged or additional relief is requested in the Commissioner's suit against others not named in the first suit, as the abatement in such case is partial."
Mr. Warren, in making the present application, argued that I would not have entertained any further proceedings in this matter on November 3d 1941, if the suit had abated. He also refers to an affidavit read by Judge Meaney when he was acting for the Commissioner relative to the application on November 3d 1941. The affidavit referred to was never filed in this court and I have no recollection as to whether the affidavit was read by Judge Meaney or not. If counsel for the Commissioner has the affidavit, I will instruct him to file the same. If the original affidavit is not in the Commissioner's possession, I will permit the filing of the copy offered by the complainants. I have read that copy and I am satisfied that the contents thereof will not alter the conclusions herein reached.
No misapprehension relative to the abatement of the suit by the solicitors or by the court could revive a suit in 1941 which ceased to exist in 1939.
By the order of June 22d 1939, the Commissioner was intended to be continued in possession and control of the mortgage pool trust and any other trusts in which the Title Company, prior to its closing, had been acting in a fiduciary or trust capacity. If there is any question about that fact, the order will be amplified to make it clear. *Page 334