219 U.S. 339 (1911)
SEXTON, AS TRUSTEE IN BANKRUPTCY OF KESSLER & COMPANY,
v.
DREYFUS.
SAME
v.
LLOYD'S BANK, LTD.
Nos. 662, 663.
Supreme Court of United States.
Submitted January 6, 1911.
Decided January 23, 1911.
APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.
Mr. Wallace Macfarlane and Mr. George H. Gilman for appellant.
Mr. Frederic R. Coudert, for appellees in No. 662.
Mr. Rufus W. Sprague, Jr., for appellee in No. 663.
*343 MR. JUSTICE HOLMES delivered the opinion of the court.
In both of these cases secured creditors selling their security some time after the filing of the petition in bankruptcy and finding the proceeds not enough to pay the whole amount of their claims, were allowed by the referee to apply the proceeds first to interest accrued since the filing of the petition, then to principal, and to prove for the balance. The referee certified the question whether the creditors had a right to the interest. The District Judge answered the question in the affirmative, giving the matter a very thorough and persuasive discussion, and declining to follow the English rule. In re Kessler, 171 Fed. Rep. 751. On appeal his decision was affirmed by a majority of the Circuit Court of Appeals. 180 Fed. Rep. 979.
The argument certainly is strong. A secured creditor could apply his security to interest first when the parties were solvent, Story v. Livingston, 13 Pet. 359, 371, and liens are not affected by the statute. Section 67d. The law is not intended to take away any part of the security that a creditor may have, as it would seem at first sight to do if the course adopted below were not followed. Some further countenance to that course is thought to be found in § 57h, which provides that the value of securities shall *344 be determined by converting them into money `according to the terms of the agreement,' for it is urged that by construction the right to apply them to interest is as much part of the agreement as if it had been written in. Nevertheless it seems to us that on the whole the considerations on the other side are stronger and must prevail.
For more than a century and a half the theory of the English bankrupt system has been that everything stops at a certain date. Interest was not computed beyond the date of the commission. Ex parte Bennet, 2 Atk. 527. This rule was applied to mortgages as well as to unsecured debts; Ex parte Wardell, 1787; Ex parte Hercy, 1792, 1 Cooke, Bankrupt Laws, 4th ed., 181; (1st ed., Appendix), and notwithstanding occasional doubts it has been so applied with the prevailing assent of the English judges ever since. Ex parte Badger, 4 Ves. 165. Ex parte Ramsbottom, 2 Mont. & Ayrt. 79. Ex parte Penfold, 4 De G. & Sm. 282. Ex parte Lubbock, 9 Jur. N.S. 854. In re Savin, L.R. 7 Ch. 760, 764. Ex parte Bath, 22 Ch. Div. 450, 454. Quartermaine's Case [1892], 1 Ch. 639. In re Bonacino, 1 Manson, 59. As appears from Cooke, sup., the rule was laid down not because of the words of the statute but as a fundamental principle. We take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us when we copied the system, somewhat as the established construction of a law goes with the words where they are copied by another State. No one doubts that interest on unsecured debts stops. See § 63 (1). Board of County Commissioners v. Hurley, 169 Fed. Rep. 92, 94.
The rule is not unreasonable when closely considered. It simply fixes the moment when the affairs of the bankrupt are supposed to be wound up. If, as in a well known illustration of Chief Justice Shaw's, Parks v. Boston, 15 Pick. 198, 208, the whole matter could be settled in a *345 day by a pie-powder court, the secured creditor would be called upon to sell or have his security valued on the spot, would receive a dividend upon that footing, would suffer no injustice, and could not complain. If, under § 57 of the present act, the value of the security should be determined by agreement or arbitration the time for fixing it naturally would be the date of the petition. At that moment the creditors acquire a right in rem against the assets. Chemical National Bank v. Armstrong, 59 Fed. Rep. 372, 378, 379. Merrill v. National Bank of Jacksonville, 173 U.S. 131, 140. When there is delay in selling because of the hope of getting a higher price it is more for the advantage of the secured creditor than of any one else, as he takes the whole advance and the others only benefit by a percentage, which does not seem a good reason for allowing him to prove for interest by indirection. Whenever the creditor proves, his security may be cut short. That is the necessarily possible result of bankruptcy. The rule under discussion fixes the moment in all cases at the date which the petition is filed, but beyond the fact of being compelled to realize his security and look for a new investment there is no other invasion of the secured creditor's contract rights, and that invasion is the same in kind whatever moment may be fixed.
It is suggested that the right of a creditor having security for two claims, one provable and the other unprovable, to marshal his security against the unprovable claim, (see Hiscock v. Varick Bank, 206 U.S. 28, 37), is inconsistent with the rule applied in this case. But that right is not affected by fixing a time for winding up, and the bankruptcy law does not touch securities otherwise than in this unavoidable particular. The provision in § 57h for converting securities into money according to the terms of the agreement has no appreciable bearing on the question. Apart from indicating, in accordance with § 67d, that liens are not to be affected, it would seem rather to *346 be intended to secure the right of the trustees and general creditors in cases where the security may be worth more than the debt. The view that we adopt is well presented in the late Judge Lowell's work on Bankruptcy, § 419; seems to have been entertained in Coder v. Arts, 152 Fed. Rep. 943, 950, (affirmed without touching this point, 213 U.S. 223), and is somewhat sustained by analogy in the case of insolvent banks. Merrill v. National Bank of Jacksonville, 173 U.S. 131, 140. White v. Knox, 111 U.S. 784, 787.
Interest and dividends accrued upon some of the securities after the date of the petition. The English cases allow these to be applied to the after accruing interest upon the debt. Ex parte Ramsbottom, 2 Mont. & Ayrton, 79. Ex parte Penfold, 4 De G. & Sm. 282. Quartermaine's Case [1892], 1 Ch. 639. There is no more reason for allowing the bankrupt estate to profit by the delay beyond the day of settlement than there is for letting the creditors do so. Therefore to apply these subsequent dividends, &c., to subsequent interest seems just.
Decrees reversed.