TATE, Circuit Judge:
 

 This appeal arises from proceedings in a Chapter 7 (“Liquidation”) case filed under the Bankruptcy Code of 1978, 11 U.S.C. §§ 101 et seq. The essential issue concerns the exercise of the power of the bankruptcy court, in allowing claims against the debtor’s estate, to fix the “estimated” value of “any contingent or unliqui-dated claim”. 11 U.S.C. § 502(c)(1). The creditors-appellants contend that the bankruptcy court abused its discretion by fixing the estimated value as of the date the bankruptcy petition was filed. The creditors contend that, instead, they were entitled under state law to select a later date (within the time allowed by the Code for the creditors to file their claim,) and to be allowed the higher market value on that date.
 

 More specifically, creditors of Brints Cotton Marketing Inc. (“Brints”), the Chapter 7 bankruptcy debtor, appeal the determination by the bankruptcy court, later affirmed by the district court, that damages from the breach of their uncalled, “on call” contracts with Brints are to be calculated based upon the (rising) market value of cotton on the date of Brints’ filing of its Chapter 7 bankruptcy petition. On this appeal, the creditors contend that the bankruptcy court abused its discretion by not allowing the creditors to call their contracts (at a higher market value) on some date after the bankruptcy petition had been filed.
 

 We affirm, finding (1) that the filing of the Chapter 7 petition in bankruptcy empowered the Bankruptcy Court to fix the estimated value of the unliquidated (uncalled) contracts, displacing any right of the creditor under state law (absent bankruptcy) to call them at a higher price, and (2) that the Bankruptcy Court did not abuse its statutory discretion by estimating the value of the uncalled contracts as of the date of the filing of the petition in bankruptcy.
 

 I.
 

 Brints was engaged in the business of marketing cotton and grain. From its inception in early 1980 until the filing of its bankruptcy petition, Brints entered into hundreds of “on-call” contracts with farmers
 
 [1]
 
 who delivered their goods to the corporation. Such “on-call” contracts entered by Brints with farmers for cotton crops form the subject matter of this appeal.
 

 In essence, the “on-call” contracts functioned as follows: Farmers sold cotton to Brints by delivering their warehouse receipts to Brints, generally receiving partial payment and an option to fix by “call” the ultimate price they would receive for their cotton.
 
 [2]
 
 At any time subsequent to the farmer’s sale to it, Brints was contractually
 
 *1340
 
 permitted to sell the cotton warehouse receipts at the prevailing market price. However, the ultimate purchase price to the farmer under the “on-call” contract for the goods was to be established by the farmer upon his “calling” his contract at some future date.
 
 [3]
 
 Upon the farmer’s calling of his contract, Brints would pay the farmer the difference between the initial partial payment and the market value of the goods on the date the farmer exercised his option. If Brints had sold the cotton prior to the farmer’s call at a greater or lesser market price than that ultimately owed to the farmer, it either kept the profit or bore the loss.
 

 In anticipation of a downturn in 1982 of the market value of cotton, Brints sold virtually all of the cotton it had purchased from farmers. Market conditions, however, took a dramatic turn, and the market value of cotton started rising. As the market value of cotton continued to rise, many farmers started “calling” their contracts. No longer having any cotton to sell to cover the “calls”, Brints filed this Chapter 7 bankruptcy petition.
 

 The creditors involved in this appeal are those farmers that had executed “on-call” contracts with Brints and, as of the filing by Brints of a bankruptcy petition, had yet to exercise their options to “call” the contracts. These creditors had attempted to “call” their contracts, post-petition by notice to the trustee, and they contend the market value of the cotton should be fixed with regard to their claims as of the respective post-bankruptcy dates of call, which in each ease was higher than the market value at the date the petition was filed.
 
 [4]
 
 The issue before us, thus, concerns the market-value date to be used to determine the amount of the purchase price deficiency owed by the debtor Brints to the respective farmer-creditors.
 

 The trustee of the debtor Brints’ estate filed with the bankruptcy court notice of an intention to reject as executory contracts the “on-call” contracts at issue herein. After a hearing, the bankruptcy court found that the subject contracts were not execu-tory
 
 [5]
 
 and that therefore the contracts could not be rejected by the trustee.
 

 The bankruptcy court, nonetheless, reasoned that the trustee’s motion was designed to establish a method for turning the uncalled, “on-call” contracts into liquidated claims. It determined, in a ruling not challenged herein on appeal, that the contracts were breached on the date the bankruptcy petition was filed. It also fixed, for purposes of computing damages owed these farmer-creditors, the ultimate price for those contracts at the market price for cotton on the date the bankruptcy .petition was filed.
 

 The district court found no abuse of discretion in the bankruptcy court’s rulings.
 

 II.
 

 In enacting the Bankruptcy Code of 1978, Congress intended that all claims, including unliquidated and contingent claims, be “dealt with” in the bankruptcy proceeding. S.Rep. No. 989, 95th Cong., 2d Sess. 22,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5808. Further, it was intended that “all claims against the debtor be converted into dollar amounts”. S.Rep. No. 989, 95th Cong., 2d Sess. 65,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5758, 5851. Accordingly, the Code provides that
 
 *1341
 
 a claim that is “contingent or unliquidated” shall be “estimated”, if the “fixing or liquidation of [the claim] ... would unduly delay the closing of the case.” 11 U.S.C. § 502(c)(1).
 

 In estimating the value of an unliq-uidated claim, “the bankruptcy court is bound by the legal rules which govern the ultimate value of the claim.” 3 Collier, Bankruptcy 11502.03 at 502-77 (15th ed. 1983). “In estimating a claim, the bankruptcy court should use whatever method is best suited to the circumstances.”
 
 Id.
 
 A bankruptcy court’s estimation of the value of an unliquidated claim, the liquidation of which would unduly delay the proceedings, may be disturbed on appellate review only in the event of an abuse of discretion.
 
 Bittner v. Borne Chemical Company, Inc.,
 
 691 F.2d 134, 136 (3d Cir.1982).
 
 See also In re Adams,
 
 642 F.2d 173, 174 (5th Cir.1981) (abuse of discretion found in bankruptcy court’s decision to disallow a claim under section 57(c) of the Bankruptcy Act, the predecessor section of section 502(c) of the Bankruptcy Code of 1978).
 

 III.
 

 On appeal,.the creditors contend that the bankruptcy court abused its discretion in fixing the contract price for the uncalled, “on-call” contracts based upon the market value of cotton on the date of the filing of the bankruptcy petition. They argue that the bankruptcy court’s estimation of their claims must be in accordance with applicable state contract law, which they urge gives them the right to fix a reasonable price on their contracts; that right, they contend, may be properly exercised by the calling of their contracts at any time after Brints breached the contracts by filing its bankruptcy petition. Moreover, they argue that such a reasonable exercise of the right at any time prior to the deadline for filing a proof of claim, as purportedly all of the creditors herein have done, would render estimation of such claims unnecessary because such a liquidation of the claims as of the date of their post-bankruptcy call would not unduly delay closing of the case.
 

 The bankruptcy court, after a hearing, established the price for the contracts based upon the market value of cotton at the time the Chapter 7 bankruptcy petition was filed. State contract law purportedly applicable to this case seemingly provides that the creditors herein are entitled to what they fix as a “reasonable price” on the “on-call” contracts breached by Brints.
 
 [6]
 

 Whatever the merits under state law of that view absent bankruptcy, the creditors’ contention overlooks that, while state law ordinarily determines what claims of creditors are valid and subsisting obligations, a bankruptcy court is entitled (if authorized by the federal bankruptcy statute) to determine how and what claims are allowable for bankruptcy purposes, in order to accomplish the statutory purpose of advancing a ratable distribution of assets among the creditors.
 
 Vanston Bondholders Protective Committee v. Green,
 
 329 U.S. 156, 161, 162-63, 67 S.Ct. 237, 239, 240, 91 L.Ed. 162 (1946). For example, post-petition accumulation of interest (allowable by state law) on claims against a bankrupt’s estate are suspended, not only on grounds of “historical considerations of equity and administrative convenience,” but also as reflecting “the broad equitable principle that creditors should not be disadvantaged
 
 vis-a-vis
 
 one another by legal delays attributable solely to the time-consum
 
 *1342
 
 ing procedures inherent in the administration of the bankruptcy laws.”
 
 Nicholas v. United States,
 
 384 U.S. 678, 682, 683, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966).
 

 Seven decades ago, the Supreme Court rejected arguments generically similar to the present that a creditor could improve his position vis-a-vis other creditors by action taken by him post-petition.
 
 Sexton v. Dreyfus,
 
 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911). The Court there upheld the fixing of the creditor’s rights as of the date of filing the bankruptcy petition, noting the historical fiction that such date “simply fixes the moment when the affairs of the bankrupt are supposed to be wound up”, as if “the whole matter could be settled in a day”.
 
 Id.,
 
 219 U.S. at 344, 31 S.Ct. at 257.
 
 [7]
 

 Through the Bankruptcy Code enacted in exercise of constitutionally granted bankruptcy regulation, the Congress has provided, as earlier noted, that the Bankruptcy Court may fix the “estimated” value of unliquidated claims such as the present “for purpose of allowance” as provable debts against the debtor’s estate. 11 U.S.C. § 502(c)(1). The issue is whether the bankruptcy court abused its discretion by fixing the date of estimated valuation of these unliquidated claims as of the date of the filing of the petition in bankruptcy.
 

 We find no such abuse here. Not only is the court’s action here supported by the historical reasons that view the petition-date as the fictitious date on which the debtor’s assets are to be ratably distributed among the creditors. Likewise, such date reasonably represented, within the discretion of the court, the application of the most fair (in equal treatment of similarly situated creditors) and most administratively efficient general methodology for determining the call price of the various unliqui-dated creditors, whatever the price fluctuations that might follow institution of the bankruptcy proceedings.
 

 Selecting a later date, it is true, might have proved more advantageous under present circumstances to the present creditors. However, if prices had fallen after filing of the bankruptcy petition, or if they had fluctuated upward and downward to the farmer-creditors’ potential gain or loss, the determination of a price-fixing date would of necessity have presented administrative liquidation-delaying problems and would also have involved an element of choice more arbitrary than that of the petition date.
 

 On the date the bankruptcy petition was filed, there were over 1,200 “on-call” contracts upon which farmers had not fixed the price. To allow these farmers to “call” these contracts after the filing of the petition, and at any time prior to the deadline for filing a proof of claim, would have imposed such an administrative burden as to delay the closing of the case. For these additional reasons, we find that the bankruptcy court did not abuse its discretion by estimating the value of the unliquidated claim at issue.
 

 Conclusion
 

 Finding no merit to the creditors’ arguments that the bankruptcy court abused its discretion, we affirm.
 

 [1]
 

 . Brints also entered similar contracts with speculators and brokers.
 

 [2]
 

 . At the time of the sale, Brints usually tendered to the farmers partial payment of the as yet undetermined purchase price, generally in an amount approximately equal to the good's current Commodity Credit Corporation loan value.
 

 The farmers were, however, given a choice to receive immediately the market value of commodity or to enter an “on-caH" contract. Only "on-call” contracts are involved in this litigation.
 

 [3]
 

 . A farmer could exercise his option to “call” the contract by simply notifying Brints that he was "fixing" the price of the good as of the date of the call.
 

 [4]
 

 . There are two other categories of farmer-creditors not before us on this appeal. The first are those who called their contracts prior to the filing of the bankruptcy petition, and these the bankruptcy court held thus presented liquidated claims (the price fixed as of the prepetition date of call, per the contract); no contention of error is presented as to this ruling. The second category (not before us) are those farmer-creditors who had not attempted to call their contracts cither before or after the filing of the petition; as to these, the bankruptcy court’s present ruling applied that the date to be used to fix the estimated value of these unliquidated claims was the petition-filing date.
 

 [5]
 

 . On appeal, neither the creditors nor the trustee question the correctness of that ruling.
 

 [6]
 

 . "When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of.one party the other may ... himself fix a reasonable price."
 

 Tex.Bus. & Com.Code Ann. § 2.305 (Vernon 1967).
 

 The other provisions of state law relied upon by the creditors contemplate that a contract price had been established between the parties and arc to the effect that, upon a breach by a buyer, the seller is entitled to damages based upon the price contemplated by the contract. Tex.Bus. & Com.Code Ann. §§ 2.708, 2.709 (Vernon 1967). Without discussion, we simply note that this statutory measure (absent bankruptcy) of damages does not control the Code-granted power of the bankruptcy court to fix the "estimated” value of claims that arc unliquidated at the time the bankruptcy petition is filed.
 

 [7]
 

 . Moreover, for all practical purposes Brints ceased to exist as an economic entity beyond the petition date, the Chapter 7 petition having instituted the "expeditious” liquidation of Brints’ estate. 11 U.S.C. § 704(1). Only in very limited circumstances could the bankruptcy court have granted the trustee of Brints’ estate the right to continue to operate its business beyond the filing of its Chapter 7 petition, and then only for a limited period. 11 U.S.C. § 721. For these reasons also, we do not find to be unreasonable the bankruptcy court’s action in fixing the creditors’ rights as of the date Brints ceased operations by the filing of the bankruptcy petition and thereby denying to the creditors a right to take advantage of post-petition benefits
 
 vis-a-vis
 
 other creditors that might have accrued to them absent bankruptcy.
 
 Cf. Nicholas v. United States,
 
 384 U.S. 678, 683-84, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966);
 
 Sexton
 
 v.
 
 Dreyfus,
 
 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911);
 
 In Re Boston and Maine Corp.,
 
 719 F.2d 493, 495 (1st Cir.1983).