### In re EVANS PRODUCTS CO., et al., Debtors.

No. 86–740–CIV–SCOTT.

Bankruptcy Nos. 85–00512–BKC–TCB to 85–00519–BKC–TCB.

United States District Court,
S.D. Florida,
Miami Division.

May 9, 1986.

864

Randall H. Brook, Seattle, Wash., for FTC.

Robert Mark, Arky, Freed, Stearns, Watson, Greer & Weaver, P.A., Miami, Fla., for debtors.

MEMORANDUM DECISION

SCOTT, District Judge.

The Federal Trade Commission ("FTC") appeals from an Order Sustaining Objections to FTC's Proofs of Claim entered by the bankruptcy court on March 11, 1986.[1] The FTC's $67 million claim is based on an action currently pending in the district court for the Western District of Washington.[2] In that action, pursuant to the Federal Trade Commission Act ("FTCA"), the FTC seeks a permanent prohibitory injunction and other equitable relief, including restitution, against the debtors, Evans Products Company and its subsidiary Evans Financial Corporation. The reasons stated by the bankruptcy court for disallowing the FTC's claim will be discussed in the context of the issues they raise upon appeal.

## I. JURISDICTION

The FTC initially contends that the bankruptcy court lacked subject matter jurisdiction.

■ Section 157(b)(1) of Title 28 of the United States Code allows bankruptcy judges to hear and determine "all core proceeding arising under title 11 or arising in a case under title 11 ...." Core proceedings include matters concerning the administration of the estate. 28 U.S.C. 157(b)(2)(A). The process of determining the allowance of claims is of basic importance to the administration of a bankruptcy estate. *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947). Moreover, the allowance or disallowance of claims against the estate is defined expressly as a core proceeding by 28 U.S.C. 157(b)(2)(B).

The essence of the bankruptcy court's action was the disallowance of the FTC's claim which is expressly defined as a core proceeding. Although it was necessary for the bankruptcy court to construe federal law in making its determination of allowability,[3] that fact does not change the nature of the court's action. In the present action, therefore, under the provisions of 28 U.S.C. 157(b)(1), 157(b)(2)(A), and 157(b)(2)(B), the bankruptcy court had core proceeding jurisdiction to determine the allowability of the FTC's claim.

## II. FTC AUTHORITY TO SEEK MONETARY EQUITABLE RELIEF

■ The bankruptcy court, in disallowing the FTC's claim, reasoned that although § 13(b) of the FTCA provides implicit authority for the FTC to seek monetary equitable relief in some cases, that implicit authority does not embrace the particular FTC claim at issue in the Washington district action.[4] The FTC argues that under § 13(b), courts have inherent equitable powers to grant monetary relief even though Evans' alleged violations have completely ceased.

Succinctly stated, the issue is whether, incident to its express statutory authority to issue a permanent injunction under § 13(b), a court may exercise the traditional inherent powers of a court of equity and grant ancillary relief when the alleged practices have ceased and are not likely to

---

1. On April 18, 1986, this Court granted an emergency motion by the FTC for an expedited hearing. The hearing was held on May 5, 1986.

2. The FTC filed its action on January 11, 1985, two months before the debtors filed a petition under Chapter 11 of the Bankruptcy Code. The bankruptcy court subsequently denied the debtors' motion to enjoin the FTC from pursuing the district court action in Washington permitting adjudication of the controversy in the Western District of Washington. On April 22, 1986, The Honorable Carolyn R. Dimmick stayed all proceedings in that district court action pending this appeal.

3. 11 U.S.C. § 502(b)(1) requires the disallowance of a claim "unenforceable against the debtor ... under ... applicable law." In examining the claim's allowability, therefore, the bankruptcy court had an affirmative duty to determine whether the claim was cognizable as a legal obligation under federal law.

4. The appropriate standard of review when a district court undertakes to decide an appeal from the bankruptcy court is *de novo* review for conclusions of law. *Matter of Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980).

recur. In making this determination, the often quoted principles are clear.

Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Virginian R. Co. v. System Federation*, 300 U.S. 515, 552 [57 S.Ct. 592, 601, 81 L.Ed. 789]. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 [64 S.Ct. 587, 592, 88 L.Ed. 754.].

. . . .

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." *Brown v. Swann*, 10 Pet. 497, 503 [9 L.Ed. 508]. *See also Hecht Co. v. Bowles, supra*, [321 U.S.] 330 [64 S.Ct. 592].

*Porter v. Warner Holding Co.*, 328 U.S. 395, 397–98, 66 S.Ct. 1086, 1088–89, 90 L.Ed. 1332 (1946).

In *Mitchell v. DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), the Supreme Court reaffirmed these principles when it stated:

When Congress entrusts to an equity court the enforcement of prohibitions in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes. As this Court long ago recognized, 'there is inherent in the Courts of Equity a

jurisdiciton to ... give effect to the policy of the legislature.' *Clark v. Smith*, 13 Pet. 195, 203.

361 U.S. at 391.92, 80 S.Ct. at 334–35.

■ Applying these principles to § 13(b), there is no indication that Congress intended to restrict the court's broad inherent equitable powers. *F.T.C. v. United States Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984); *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir.1982). Accordingly, "a grant of jurisdiction such as that contained in § 13(b) carries with it the authorization for a district court to exercise the *full range of equitable remedies* traditionally available to it." *F.T.C. v. Southwest Sunsites, Inc.*, 665 F.2d 711, 718 (5th Cir.1982) (Emphasis added). In the exercise of this inherent equitable jurisdiction, a district court may order any ancillary relief necessary to accomplish complete justice and to give effect to the policy of the legislature. Support for this conclusion also comes from *F.T.C. v. Evans Products Co.*, 775 F.2d 1084 (9th Cir.1985), where the Court stated:

Evans also argues that our previous refusal to allow the FTC to obtain restitution in a cease-and-desist proceeding under § 5(b), *see Heater v. F.T.C.*, 503 F.2d 321, 323 (9th Cir.1974), should bar the FTC from obtaining rescission and restitution in both its permanent and ancillary preliminary injunction actions. *Heater*, however, delineated the "scope of the powers given the *Commission*" to order remedies under its statute-born cease-and-desist authority, *see* 503 F.2d at 327 (emphasis added), rather than the power of the district court to remedy violations brought to its attention by the FTC acting as a litigant. *See Heater*, 503 F.2d at 326 (noting that the FTC Act "does not expressly confer any general power, of the kind possessed by a court of equity, to compel restitution, or otherwise to so mold the decree as to do substantial justice.") (quoting Henderson, *The Federal Trade Commission* 71 (1924)).

*Id.* at 1087, n. 1. In the case at bar, therefore, the FTC does have the authority to seek monetary equitable relief.

■ This Court rejects the Lenders' contention that ancillary equitable relief can only be ordered where primary injunctive relief has been granted. Although the statute speaks only of enjoining an allegedly unlawful act of practice, virtually identical statutes permitting the Securities Exchange Commission to seek injunctive relief have been interpreted as invoking the full equitable jurisdiction of the district court such that ancillary relief may be ordered though no injunctive relief is granted. *SEC v. Wencke,* 622 F.2d 1363 (9th Cir.1980); *SEC v. Penn Central, Co.,* 425 F.Supp. 593 (E.D.Pa.1976); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082 (2d Cir.1972); *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301 (2d Cir.), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971). These cases clearly hold that under a grant of jurisdiction such as that contained in § 13(b), courts have inherent equitable powers to grant ancillary relief other than injunctive relief, when future violations of the law are not likely to recur. *See also, F.T.C. v. Evans Products Co.,* 775 F.2d 1084, 1088 (9th Cir.1985) (citing with approval *SEC v. Wencke,* 622 F.2d 1363 (9th Cir.1980) and *SEC v. Penn Central Co.,* 425 F.Supp. 593 (E.D.Pa.1976)). Accordingly, in the case at bar, the district court's power under § 13(b) to exercise the full range of equitable remedies, including rescission and restitution, is not diminished by the fact that primary injunctive relief might not be granted.

### III. THE FTC'S STATUS IN BANKRUPTCY

■ While conceding that the FTC's action was not a class action in form, the bankruptcy court nevertheless reasoned that the substance of the action was so similar to a class action that in essence, the FTC was not a creditor but rather a class representative thereby precluding the allowance of its claim. The FTC contends that as a federal administrative agency, it is a creditor in its own right enforcing a statutory obligation in the public interest.

Section 501(a) of the Bankruptcy Code provides that "[a] creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest." Similarly, Bankruptcy Rule 3003(c)(1) states that "[a]ny creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule." A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(9)(A). An "entity" is then defined as a "person, estate, trust, and *governmental unit.*" 11 U.S.C. § 101(14) (emphasis added).

In *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), the Supreme Court considered whether the National Labor Relations Board was a creditor within the meaning of the Bankruptcy Act. The National Labor Relations Board had filed a proof of claim based on a back pay order previously issued against the debtor employer. The Supreme Court concluded that the National Labor Relations Board was a creditor within the meaning of the Bankruptcy Act and allowed the claim. In reaching this conclusion, the Supreme Court stated:

The Board is the public agent chosen by Congress to enforce the National Labor Relations Act. *Amalgamated Utility Workers v. Consolidated Edison Co.,* 309 U.S. 261, 269, 84 L.Ed. 738, 743, 60 S.Ct. 561. A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. *Phelps Dodge Corp. v. National Labor Relations Board,* 313 U.S. 177, 197, 85 L.Ed. 1271, 1284, 61 S.Ct. 845, 133 ALR 1217. Congress has made the Board the only party entitled to enforce the Act. A back pay order is a command to pay an amount owed the Board as agent for the injured employees. The Board is therefore a claimant in the amount of the back pay.

*Id.* at 27, 73 S.Ct. at 82.

This Court agrees with the FTC. Under *Nathanson,* the FTC is a creditor in its

own right and its claim should not have been disallowed. The decisions in *In re Johns-Manville Corp.*, 53 B.R. 346 (Bankr. Ct.S.D.N.Y.1985); *Matter of Baldwin-United Corp.*, 52 B.R. 146 (Bankr.Ct.S.D. Ohio 1985); and *Matter of GAC Corp.*, 681 F.2d 1295 (11th Cir.1982), cited by the Lenders, are not persuasive authority to the contrary. Those cases involved individual creditors who attempted to file class proofs of private claims. A claim filed in the public interest by a governmental agency based on statutory obligations was not at issue in those cases. Clearly, the "United States is a creditor not only with respect to [tax claims] but also with respect to statutory obligations enforceable by a federal administrative agency in the public interest for the benefit of private parties." 2 L.P. KING, COLLIER ON BANKRUPTCY, ¶ 101.09 (15th ed. 1985).

## IV. DUPLICATIVE CLAIMS, UNDUE BURDEN & ESTIMATION

■ Another reason stated by the bankruptcy court in its disallowance of the FTC's claim was that a portion of the claim was duplicative of claims filed by individual consumers. The FTC contends that at most, about 5% of the estimated 10,000 or more aggrieved consumers ever received notice of the bankruptcy action and only slightly over 100 filed their own proofs of claim. Even though the determination of duplicate claims is a factual one and a finding that this reviewing court must accept unless clearly erroneous,[5] the bankruptcy court erred in disallowing the entire claim when only a portion was duplicative.

One of the practical concerns expressed by the bankruptcy court in its determination to disallow the entire FTC claim instead of reducing it by the duplicative portion, was the undue delay in the progress

of the bankruptcy proceedings that evidentiary hearings might cause. On the other hand, the bankruptcy court was concerned that by simply allowing the claim in full as stated by the FTC, the feasibility of the proposed plans of reorganization might be jeopardized.

Section 502(c) of the Bankruptcy Code, however, provides a middle ground between expeditious administration and total disallowance of a claim.[6] Section 502(c) of the Bankruptcy Code, states in pertinent part:

> (c) There *shall* be estimated for purpose of allowance under this section—
>
> (1) any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the administration of the case ....

11 U.S.C. § 502(c) (emphasis added). When the Bankruptcy Code of 1978 was enacted, "Congress intended that all claims, including unliquidated and contingent claims, be 'dealt with' in the bankruptcy proceeding." *In the Matter of Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1340 (5th Cir.1984) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5808). It was also "intended that 'all claims against the debtor be converted into dollar amounts.'" *Id.* (citing S.Rep. No. 989, 95th Cong., 2d Sess. 65, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5851).

■ Accordingly, this Court determines that an estimation of the FTC claim by the bankruptcy court is not only proper but is the duty of the bankruptcy court. In making its estimation, the bankruptcy court should use whatever method is best suited to the circumstances of this case. *Bittner v. Borne Chemical Co., Inc.*, 691

---

5. *Matter of Multiponics, Inc.*, 622 F.2d 709 (5th Cir.1980). The bankruptcy court stated during the hearing on March 6, 1986, that it was presuming that a large amount of the FTC's claim was duplicative. This Court cannot view the bankruptcy court's pronouncement in open court as a finding of fact, however, for no specific quantity was ever found to be duplicative.

6. The undue delay in the progress of the bankruptcy proceeding that might be caused by awaiting the outcome of the Washington litigation was a further concern of the bankruptcy court. The utilization of § 502(c) by the bankruptcy court, however, should allay that concern.

F.2d 134, 136 (3rd Cir.1982). It is thus conceivable that if hearings will run counter to the efficient administration of the bankrupt's estate and there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value. While the bankruptcy court is "bound by the legal rules which ... govern the ultimate value of the claim .... there are no other limitations on the court's authority to evaluate the claim." *Id.* at 135–36.

## V. CONCLUSION

Under Section 13(b), courts have the traditional inherent powers of a court of equity. To give effect to the policy of the legislature, a court may exercise those powers to grant ancillary relief, including rescission and restitution, when the primary injunctive relief is not granted because the alleged violations have ceased and are not likely to recur.

As a federal agency seeking to enforce statutory obligations in the public interest, the FTC is a creditor within the meaning of the Bankruptcy Code. The FTC claim based on these statutory obligations is, therefore, deemed allowable.

Under the circumstances of this case, awaiting the outcome of the Washington litigation would unduly delay the progress of the case. Allowing the claim in full might result in duplicative claims as well as jeopardize the feasibility of the proposed plans of reorganization. Accordingly, this is an appropriate case in which to estimate the FTC claim pursuant to Section 502(c).

Accordingly, it is

ORDERED and ADJUDGED as follows:

1. The order of the bankruptcy court sustaining objections to the FTC's proofs of claim is VACATED.

2. This case is REMANDED to the bankruptcy court with direction that it estimate the amount of the FTC's claim for purposes of its allowance pursuant to § 502(c).