JERRY E. SMITH, Circuit Judge,
dissenting:
Ever since this circuit decided Fahs v. Martin, 224 F.2d 387 (5th Cir.1955), the settled rule has been that an accrual basis tax *1201 payer immediately may deduct, under the Internal Revenue Code, an expense such as interest legally owed, notwithstanding the improbability of payment. Id. at 393. No distinction is made between a debt backed by the full faith and credit of the United States and one owed by a creditor who has not only tottered at the brink of bankruptcy but has fallen into the chasm. The majority today would retreat from our rule in the ease of interest imposed by state law during the pendency of bankruptcy (“pendency interest”). As I believe the majority misinterprets the Bankruptcy Code, extinguishes a state property right and creates a federal one, and confuses the distinction between improbable and contingent payment, I respectfully dissent.
A.
I begin by examining the source of the interest at issue. The obligation to pay interest for debts owed on contracts and accounts is a creation of the law of contract. Generally, contract law among private parties in our federalist system is state law. Under the state law of contract here, Texas law, the background rule for debts owed on accounts and contracts is that interest at six percent will be imposed thirty days after the debt was due, unless the parties agree otherwise. Tex.Rev.Civ.Stat.Ann. art. 5069-1.03 (West 1987). The majority does not doubt that such a property right and its obligations existed prior to the imposition of bankruptcy.
The majority, however, believes that, post-petition, federal law controls. See Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946) (“When and under what circumstances federal courts will allow interest on claims against debtors’ estates being administered by them has long been decided by federal law.”). The majority does not specify what it means by “controls.” Presumably, however, the majority means that federal law defines which debts are valid, as that was the position taken here by the government and bankruptcy court below. See Kellogg v. United States (In re West Texas Mktg. Corp.), 155 B.R. 399, 402 (Bankr.N.D.Tex.1993) (positing that both state and federal law are “sources of liability for postpetition interest on general unsecured claims”). This view is only half right.
The federal law of bankruptcy is not designed to create debts among parties but to determine how existing debts should be distributed to creditors fairly. Justice Frankfurter’s concurrence in Vanston explains as much:
The business of bankruptcy administration is to determine how existing debts should be satisfied out of the bankrupt’s estate so as to deal fairly with the various creditors. The existence of a debt between the parties to an alleged creditor-debtor relation is independent of bankruptcy and precedes it. Parties are in a bankruptcy court with their rights and duties already established, except insofar as they subsequently arise during the course of bankruptcy administration or as part of its conduct. Obligations to be satisfied out of the bankrupt’s estate thus arise, if at all, out of tort or contract or other relationship created under applicable law. And the law that fixes legal consequences to transactions is the law of the several States.
Vanston, 329 U.S. at 169, 67 S.Ct. at 243 (Frankfurter, J., concurring); see also id. at 161, 67 S.Ct. at 239 (‘What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.”) (Black, J.) (majority opinion); Grogan v. Garner, 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991) (“The validity of a creditor’s claim is determined by rules of state law.”).
This point bears stressing. Nothing in the Bankruptcy Code awards damages for failure to deliver goods or injury from the negligent operation of a vehicle. Nor does it create the right to collect interest from an unpaid debt.
Bankruptcy law does control in the sense that courts ultimately may not enforce such rights in carrying out their constitutional and statutory obligations. As Justice Frankfurter continued:
*1202 Of course a State may affix to a transaction an obligation which the courts of other States or the federal courts need not enforce because of overriding considerations of policy. And so, in the proper adjustment of the rights of creditors and the desire to rehabilitate the debtor, Congress under its bankruptcy power may authorize its courts to refuse to allow existing debts to be proven.
Vanston, 329 U.S. at 169, 67 S.Ct. at 243. Thus, a state-law debt may enter the controls of the Bankruptcy Code as valid, but ultimately may not be enforced if the bankruptcy court, through its congressionally granted equitable powers, determines otherwise. See Fahs, 224 F.2d at 395 (“[W]e interpret [Van-ston ] only as establishing the equitable power and duty of bankruptcy courts to subordinate such a claim.”).[1]
B.
I have stressed the distinction between state property law and federal bankruptcy law in some detail, as that distinction is critical in understanding how federal bankruptcy law “controls” here. Kellogg’s state law obligation to pay interest on its overdue debts pre-dates the imposition of bankruptcy. Now, the question we must answer is when, in the bankruptcy proceedings, such a state law right is extinguished.
Turning to the Bankruptcy Code, I note that section 502(a), 11 U.S.C. § 502(a), provides, in pertinent part, that a claim is allowed unless a party in interest objects. Upon objection, section 502(b) provides, in relevant part, that “the court, after notice and a hearing, shall determine the amount of such a claim ... and shall allow such a claim in such amount except to the extent that— ... (2) such a claim is for unmatured interest.” This section is a codification of the pre-Code rule that courts need not recognize the accrual of interest during the pendency of bankruptcy.[2] When read in isolation, the plain language of § 502(b)(2) appears to extinguish a creditor’s right to earn interest and a debtor’s obligation to pay it.
A court’s duty in interpreting the Bankruptcy Code, however, is to read the statute holistically. United Sav. Ass’n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). As the majority recognizes, Congress has codified an exception to the general rule.[3] Section 726(a) of the Bankruptcy *1203 Code, which controls the order of distribution in chapter 7 cases, mandates to the court that the
property of the estate shall be distributed—
(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection. ...
This rule, like that codified in § 502(b)(2), claims an impressive pedigree from a long line of pre-Code decisions. See, e.g., 2 William Blaokstone, Commentaries *488 (“[T]hough the usual rule is, that all interest on debts carrying interest shall cease from the time of issuing the commission, yet, in the case of a surplus left after payment of every debt, such interest shall revive, and be chargeable to the bankrupt or his representatives.”).[4] Its effect is that when sufficient assets remain in the estate after prior distri-buttons, the bankruptcy court is required to pay the creditors interest.[5] The only lower distribution returns the remaining assets to the debtor. § 726(a)(6).
Accordingly, throughout bankruptcy, the debtor retains the obligation to pay its creditors interest. When sufficient assets remain upon distribution, the court must provide for the payment of interest. No doubt the creditors would insist on as much. And, while actual payment may be unlikely, the obligation to pay is not. Such an obligation, therefore, is not extinguished, but, for purposes of the bankruptcy proceedings, is ignored until the time the court determines whether the debtor’s assets can meet the obligation.[6] Only upon discharge, see § 727, is the state law obligation to pay extinguished.
This result occurs because § 502(b)(2) is a matter of convenience, not substantive law.[7] *1204 That section is premised upon the idea of making bankruptcy proceedings easier and fairer to administer, not replacing state property law with federal. The Supreme Court explained the pre-Code justification of the rule thus:
Accrual of simple interest on unsecured claims in bankruptcy was prohibited in order that the administrative inconvenience of continuous reeomputation of interest causing recomputation of claims could be avoided. Moreover, different creditors whose claims bore diverse interest rates or were paid by the bankruptcy court on different dates would suffer neither gain nor loss caused solely by delay.
Vanston, 329 U.S. at 164, 67 S.Ct. at 240. Nothing in the text or the legislative history of this section of the Bankruptcy Code, which admits to codifying much of the pre-Code practice, suggests that Congress adopted this rule for any other purpose. See John C. McCoid, II, Pendency Interest in Bankruptcy, 68 Am.Bankr.L.J. 1, 9 (1994) (“Though Congress said more this time, there is nothing in the legislative history that indicates any intention to effect any change in the law on the subject of pendency interest by virtue of these sections.”).[8]
Moreover, our precedent and Supreme Court caselaw conclude that § 502(b) does not void the state property interests, but only ignores it until distribution as a matter of policy. In Fahs, we stated that
[t]he Vanston case seems to us to establish a rule only for the distribution of a bankrupt’s assets. It did not hold that such a claim was void, but only that the claimant should not participate in the distribution of assets until all claims superior in conscience and fairness were paid.
224 F.2d at 394. We have followed this reasoning in applying the current Bankruptcy Code. See United Sav. Ass’n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd., 793 F.2d 1380, 1386 n. 5 (5th Cir.1986) (“Put differently, the petition suspended the contract right to accrue interest; it did not extinguish the right.”), reinstated, 808 F.2d 363 (5th Cir.), (en banc), aff'd, 481 U.S. 1068, 107 S.Ct. 2459, 95 L.Ed.2d 868 (1987).
Likewise, the Supreme Court has continued to adhere to Vanston.[9] In sum, *1205 § 502(b)(2), as a non-substantive rule, does not void the state right to interest, but merely limits its eventual distribution.
While the majority does not say so explicitly, it treats section 502(b) as a substantive rule. According to the majority, the non-contingent, state-law obligation to pay pen-dency interest becomes “contingent” upon the filing of the bankruptcy petition. The majority does not mean that payment is contingent, as sufficient funds must remain in order for the debt to be paid. Rather, reasoning that the ultimate distribution of any interest is contingent upon there being assets remaining in the estate to pay it, the majority holds that “the condition necessary to create the liability for the post-petition interest failed to occur.” (Emphasis added). See also 2 Jaoob MERTENS, Jr., Mertens Law op Federal Income Tax § 12A.138, at 253 (1994) (“The liability ceases to exist when the property of the corporation passes into the receiver’s hands.”).
In effect, the majority snuffs out the state-law obligation to pay interest and reimposes it at the end of distribution only upon the contingency that assets remain. The majority thus presents two difficult conceptual problems that it does not address. First, the majority does not explain what the source of this interest would be upon distribution. Does the majority believe that § 726(a)(5) is an independent source for a federal property right? Second, if the source of the right is Texas state property law, how is the risk of ultimate distribution under § 726(a)(5) different from the risk of distribution of any debt in bankruptcy?
The majority’s non-answer to these difficult questions is to resort to one case, Guardian Inv. Corp. v. Phinney, 253 F.2d 326 (5th Cir.1958), which it claims “provides a framework to consider the contingent nature of an obligation for income tax purposes.” Perhaps Guardian does, but that ease is easily distinguishable from the situation here, as in Guardian the obligation to pay the debt, a second mortgage, was contingent by the terms of the agreement itself. Here, the state property right is not contingent by its terms. Moreover, Guardian does not even mention the Bankruptcy Code. A 1958 ease that fails even to mention the Bankruptcy Code can be of little assistance in interpreting the current Code, substantially codified in 1978. Its application is simply an anachronism.
Rather than wander so far afield and out of time, I would turn to the current Bankruptcy Code and interpret the interplay between §§ 502(b)(2) and 726(a)(5) as settling a scheme for distribution of the fixed obligation to pay interest. Section 502(b)(2), which directs courts to ignore pendency interest, codifies a rule of convenience in order to ease the administration of the bankruptcy process. Section 726(a)(5) preserves the debtor’s obligation to pay this debt as a matter of fairness to the creditors.
This interpretation of the Bankruptcy Code is consistent with the language of the statute, pre-Code caselaw, the legislative history, the view of the leading commentary on bankruptcy, and, not least of all, our precedent.[10] In sum, Kellogg retains the obligation to pay pendency interest. The remaining question is whether the improbability of payment prevents Kellogg from deducting the interest.
C.
Finally, I return to an application of Fahs, in which a bankruptcy trustee attempted to *1206 deduct interest owed on mortgage indentures that accrued during the pendency of bankruptcy. The government objected, in part, on the ground that the interest was “not accruable and deductible for income tax purposes in view of the fact that there is little or no likelihood that it will ever be paid.” 224 F.2d at 393. We, however, held that “interest on an unconditional legal obligation is deductible for income tax purposes by an accrual basis taxpayer, notwithstanding the improbability of its being paid....” Id. at 395.
Contrary to the holding of the bankruptcy court here, Fahs remains the law of this circuit.[11] Even the Tax Court has recognized the continuing validity of Fahs. See Southeastern Mail Transp. Inc. v. Commissioner, 63 T.C.M. (CCH) 2893, 2905-06, 1992 WL 86031 (1992).[12] The majority opinion accepts as much.
The justification for the Fahs rule is simple. As every debt is subject to the risk of non-payment, a rule requiring absolute certainty of repayment as a prerequisite to accruing and deducting interest would make I.R.C. § 163 a nullity. No one could rely upon the accrual method. The Fahs court accordingly focused instead upon the obligation to pay. To be able to deduct a debt under the accrual method and the “all events” test, there only must be a fixed and unconditional obligation to pay.[13] Accordingly, the validity of that obligation is measured at the time it is fixed, not at the future date it should be paid.
Here, there is no dispute that the unsecured debts are valid obligations to which Texas state law attaches the obligation to pay interest after they are thirty days overdue. While the imposition of bankruptcy is probative of the uncertainty concerning the payment of the pendency interest, there is no *1207 allegation by the government, or concession by Kellogg, that the interest debt will never be paid. As long as the debt could be paid, the obligation remains. I would hold that the deduction was proper, and the bankruptcy court erred in refusing to follow Fahs.[14] Accordingly, I respectfully dissent.

. In Fahs, we further explained our position, stating:
The majority opinion [in Vanston ] may be reconciled with [the concurrence's] unquestionably correct principles only if it is regarded, as we regard it, as not declaring the obligation (regardless of validity under state law) void, but merely as subordinating it.
224 F.2d at 395 n. 5. See also Pepper v. Litton, 308 U.S. 295, 310-12, 60 S.Ct. 238, 247-48, 84 L.Ed. 281 (1939) (holding that bankruptcy court has equitable power to disallow or subordinate state judgment); Addison v. Langston (In re Prints Cotton Mktg., Inc.), 737 F.2d 1338, 1341-42 (5th Cir.1984) ("[W]hile state law ordinarily determines what claims oí creditors are valid and subsisting obligations, a bankruptcy court is entitled (if authorized by the federal bankruptcy statute) to determine how and what claims are allowable for bankruptcy purposes, in order to accomplish the statutory purpose of advancing a ratable distribution of assets among the creditors.”); see generally 3 Daniel R. Cowans, Cowan’s Bankruptct Law and Practice § 12.7, at 39-40 (1994) (examining interrelationship of state law claims and "allowability" under the Bankruptcy Code).

. See Sexton v. Dreyfus, 219 U.S. 339, 344-46, 31 S.Ct. 256, 257-58, 55 L.Ed. 244 (1911) (examining origins of American rule derived from English bankruptcy system); see also Thomas v. Western Car Co., 149 U.S. 95, 116-17, 13 S.Ct. 824, 833, 37 L.Ed. 663 (1893) (recognizing rule); American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 266-67, 34 S.Ct. 502, 504-05, 58 L.Ed. 949 (1914) (recognizing rule and exceptions); City of New York v. Saper, 336 U.S. 328, 330 & n. 7, 69 S.Ct. 554, 556 & n. 7, 93 L.Ed. 710 (1949) (same).

.In fact, the Code provides at least three exceptions. Section 726(a)(5) is discussed in the text. Section 506(b) allows interest to a secured creditor to the extent the secured property is greater than the amount of the claim. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 245-46, 109 S.Ct. 1026, 1032-33, 103 L.Ed.2d 290 (1989) (interpreting § 506(b)). Section 1124 specifically permits reinstatement of a debt according to its original contractual terms if the debtor brings current the payments of principal and interest accrued during bankruptcy. See United Sav. Ass’n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d 363, 380 (5th Cir.1987) (en banc) (Jones, J., dissenting), aff'd, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

. Thus, while pre-Code precedent supports the argument that interest stops running when a bankruptcy petition is filed, Sexton, 219 U.S. at 344, 31 S.Ct. at 257, this practice was not absolute. Two, if not three, exceptions were recognized. See Ron Pair, 489 U.S. at 246, 109 S.Ct. at 1033. The two well-recognized rules were: If the alleged bankrupt proved solvent, creditors received post-bankruptcy interest before any surplus was returned to the bankrupt; and if securities of the bankrupt produced interest or dividends during bankruptcy, such amounts were supplied to post-bankruptcy interest. Saper, 336 U.S. at 330 n. 7, 69 S.Ct. at 556 at n. 7. Of more doubtful origin, under pre-Code precedent, was an exception for oversecured claims. Ron Pair, 489 U.S. at 246, 109 S.Ct. at 1033.

. Because § 726(a)(5) states that the interest should be set "at the legal rate,” Texas state law determines the existence and amount of interest. See generally Chaim J. Fortgang & Lawrence P. King, The 1978 Bankruptcy Code: Some Wrong Policy Decisions, 56 N.Y.U.L.Rev. 1148, 1151-52 (1981) (discussing whether "legal rate” means statutory rate or rate set by contracts). As no rate was set by the contracts here, this problem is not presented.

. Courts in applying the general rule of 502(b)(2) have used various terms to describe its effect: Interest is "suspended," Nicholas v. United States, 384 U.S. 678, 682 & n. 9, 86 S.Ct. 1674, 1679 & n. 9, 16 L.Ed.2d 853 (1966), ceases to-run, Ron Pair, 489 U.S. at 246, 109 S.Ct. at 1033, stops, Saper, 336 U.S. at 330, 69 S.Ct. at 555, is "not computed," Sexton, 219 U.S. at 344, 31 S.Ct. at 257, and is not allowed, Vanston, 329 U.S. at 163, 67 S.Ct. at 240. The exact terminology, while important, does not overcome the requirements of the Bankruptcy Code, however. As discussed helow, where the Code provides an exception to the general rule, the right to the interest continues to exist.

.The leading commentary on bankruptcy has recognized as much:
[C]are must be taken not to confuse tax accrual concepts and payment in a title 11 context. Section 502(b)(2) of the Bankruptcy Code prescribes the grounds for objecting to claims in a title 11 case. By itself, it does not change the legal rights of the holder of ah obligation against the debtor. Put another way, the general rule in title 11 cases that there is no accrual of postpetition interest is a rule of convenience governing distributions to creditors. It is not a rule of substantive law that converts an interest-bearing indebtedness to a nonenforceable, non-interest-bearing indebtedness. Even In re Continental Vending Mach. Corp., [77-1 U.S.Tax Cas. (CCH) ¶ 9,121, at 86,093, 1976 WL 913 (E.D.N.Y.1976)], which is often cited for the opposite position against tax accrual of post-petition interest, state unequivocally:
A bankruptcy petition, whether straight or a corporate reorganization, ... suspends or postpones the accrual of interest even though the "claim has not lost its interest-bearing quality.”
Id. at 86,097-98 (citing 6A Colliers on Bankruptcy ¶ 9.08, at 194 (14th ed.)).
1A Eliot G. Freier et al., Colliers on Bankruptcy ¶ 22.05, at 22-40 (Lawrence P. King ed., 15th ed. *1204 1988) [hereinafter Colliers on Bankruptcy]; see also 3 Colliers on Bankruptcy, supra, ¶ 502.02[2] (discussing general principles of bankruptcy as applied to unmatured interest).

. Indeed, the legislative history in the Senate and House reports accompanying the Bankruptcy Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, shows that the current Bankruptcy Code enacted much of the pre-Code rules regarding pendency interest. See S.Rep. No. 989, 95th Cong., 2d Sess. 62-63 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5848-49 (stating that § 502(b)(2) contains "two principles of current law,” including rule that unmatured interest is disallowed); H.Rep. No. 595, 95th Cong., 1st Sess., 352-53 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6308 (same); S.Rep. No. 989, 95th Cong., 2d Sess. 97 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5883 (stating that § 726(a)(4) provides that punitive penalties are subrogated to all other claims, "except interest accruing during the case”; § 726(a)(5) provides for post-petition interest where assets remain); H.Rep. No. 595, 95th Cong., 1st Sess. 383 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6339 (same); see also Report of the Committee of Finance, S.Rep. No. 95-1106, 95th Cong., 2d Sess. 22-23 (1978), reprinted in 3 app. Colliers on Bankruptcy, supra, at Tab VI (recognizing "subordination rule” for post-petition interest and recommending that tax liens and interest be "non-dischargeable”). A search of the Congressional Record reveals no discussion or even language suggesting that the pre-Code rules should be discarded or Vanston legislatively overturned. See 124 Cong.Rec. 1783 (1978); 124 Cong.Rec. 32,383 (1978); 124 Cong. Rec. 34,143 (1978); 124 Cong.Rec. 28,257 (1978). Finally, the suggested bill contained in the report of the Commission of the Bankruptcy Laws of the United States, which provided much of the legislative impetus for the 1978 Act, provided an explicit provision for the payment of interest. McCoid, supra, at 8-9 (citing Report of the Commission on the Bankruptcy Laws of the United States § 4-405(a)(8), H.R.Doc. No. 137, 93d Cong. 1st Sess., Part II, at 110 (1973)).
I have examined the legislative history to show that the majority’s reliance upon the Senate and House reports discussing § 502(b)(2) is incomplete. That section must be read in context with the other sections of the Code, their legislative history, and the pre-Code practice that the Code adopted.

. See Nicholas v. United States, 384 U.S. 678, 689, 86 S.Ct. 1674, 1682-83, 16 L.Ed.2d 853 (1966) (quoting Vanston passage with approval); Burning v. United States, 376 U.S. 358, 362 n. 4, 84 S.Ct. 906, 909 n. 4, 11 L.Ed.2d 772 (1964) (same); American Iron, 233 U.S. at 266, 34 S.Ct. at 504 (explaining that the pre-Code rule applies, *1205 “not because the claims had lost their interest-bearing quality during [receivership], hut [because it] is a necessary and enforced rule of distribution, due to the fact that in case of receiv-erships the assets are generally insufficient to pay debts in full.''); 3 Collier on Bankruptcy, supra, ¶ 502.2[2], at 34-34.1 (noting that § 502(b)(2)'s "disallowance of claims for unma-tured interest or claims accruing after the date of the filing of the petition is one of policy and convenience rather than a statement of substantive law”).

. Even the Tax Court has recognized the continuing validity of Fahs. See Southeastern Mail Trans. Inc. v. Commissioner, 63 T.C.M. (CCH) 2893, 2905-06, 1992 WL 86031 (1992). Apparently, it is also consistent with earlier IRS policy. See, e.g., Rev.Rul. 70-367, 1970-2 C.B. 37 (1970) (holding that interest accrued for obligations of debtor corporation undergoing reorganization under Bankruptcy Act). “The doubt as to the payment of such interest is not a contingency of a kind that postpones the accrual of the liability until the contingency is resolved.” Id.

. See, e.g., Tampa & Gulf Coast R.R. v. Commissioner, 469 F.2d 263, 264 (5th Cir.1972); Lawyers' Title Guar. Fund v. United States, 508 F.2d 1, 6 (5th Cir.1975) ("The law also is that a hare possibility of non-payment or delay in payment because of the principal's financial condition does not defeat accrual either."); W.S. Badcock Corp. v. Commissioner, 491 F.2d 1226, 1228 (5th Cir.1974) (recognizing rule that risk of collection does not defeat fixed liability for accrual purposes). The government does correctly note that we have created an exception to the rule in Fahs. Where there is no possibility of eventual payment, no obligation is fixed, and therefore an interest deduction is improper. In Tampa & Gulf Coast R.R., 469 F.2d at 264, for example, we recognized the general principle of Fahs but held that it had to give way to extreme circumstances of the case before it. In Tampa, a parent and subsidiary corporation had created a tax shelter where the rent payments from the parent to the subsidiary were offset by accrued but unpaid interest payments on debts to the parent. The court found that Fahs did not apply, as the debt would never be paid on account of the beneficial tax relationship between the corporations.

. Even the Tax Court, at tunes, appears to apply an approach similar to, but more restrictive than, Fahs. See Cohen v. Commissioner, 21 T.C. 855, 857, 1954 WL 408 (1954) (holding that deductions are proper, except where interest "categorically" will not be paid); Jorden v. Commissioner, 11 T.C. 914, 925, 1948 WL 96 (1948) (same); see also Zimmerman Steel Co. v. Commissioner, 45 B.T.A. 1041 (1941) (outlining general approach), rav’d, 130 F.2d 1011 (8th Cir.1942). The Third Circuit apparently has acquiesced in the Tax Court's approach. See Pearlman v. Commissioner, 153 F.2d 560, 563 (3d Cir.1946) (affirming Tax Court decision reported at 4 T.C. 34, 1944 WL 197 (1944) (that applies Tax Court's interpretation of Zimmerman ).
The Eighth Circuit, the Eleventh Circuit, and the Court of Federal Claims, however, follow the rule we adopted in Fahs. See Keebey’s Inc, v. Paschal, 188 F.2d 113, 115-16 (8th Cir.1951); Zimmerman Steel Co. v. Commissioner, 130 F.2d 1011, 1012 (8th Cir.1942); Sartin v. United States, 5 Cl.Ct. 172, 176 (1984) (citing Fahs rule with approval); cf. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) (holding that Fifth Circuit precedent prior to circuit split is binding on the Eleventh Circuit). The leading case not following Fahs originates from a district court in the Second Circuit. See In re Continental Vending Mach. Corp., 77-1 U.S.Tax Cas. (CCH) ¶9121, 1976 WL 913 (E.D.N.Y.1976).

.See I.R.C. §§ 163, 461; Treas.Reg. § 1.461-1(a)(2); see abo, e.g., United States v. Hughes Properties, Inc., 476 U.S. 593, 600, 106 S.Ct. 2092, 2096, 90 L.Ed.2d 569 (1986) ("[T]o satisfy the all-events test, a liability must be final and definite in amount, must be fixed and absolute, and must be unconditional.”).

. As this result would moot the 11 U.S.C. § 505(b) issue, I do not address it.