# SEXTON, AS TRUSTEE IN BANKRUPTCY OF KESSLER & COMPANY, v. DREYFUS.   ·

## SAME v. LLOYD'S BANK, LTD.

### ·APPEALS FROM THE CIRCUIT COUR'S OF APPEALS FOR THE· SECOND CIRCUIT.

Nos. 662, 663.  Submitted January 6, 1911.—Decided January 23, 1911. ˮ

Under the Bankruptcy Act of 1898, a secured creditor selling his secu-
ˮrities·after the filing of the petition must apply the proceeds, other
· than interest and dividends accrued since the date of the petition,
first to the liquidation of the debt with interest to the date of the
petition; he cannot first apply such proceeds to interest accrued
since the petition.
A secured creditor of a bankrupt can apply interest and dividends ac-
cruing on the securities after the date of the petition to interest on
the debt accruing after such date.   ·
The English rule and authorities discussed and approved.
180 Fed. Rep. 979, reversed.

THE facts, which involve the construction of certain pro- ·
visions of the Bankruptcy Act of 1898, are stated in the
opinion.

*Mr. Wallace Macfarlane* and *Mr. George H. Gilman* ˮfor
appellant: ˮ
The bankruptcy law forbids the allowance of interest on
provable debts after the date of the filing of the petition.
Sections 57, 57h, 63; and see corresponding provision, § 19,
law of 1867; Collier on Bankruptcy, 7th ed:, 701.
Interest accruing after petition filed is obviously not a
debt existing at the time of filing, and so by the express
provisions of the act is excluded from proof.  See official
forms Nos. 31 and 32, for proof of debt.
As long as the secured creditor stays outside the Bank-
ruptcy Act, or as the English court puts it, "sits on his ·

security," and claims nothing under the bankruptcy law, he is entitled to the full proceeds of his securities, and to collect from them all the interest and principal of his debt, if he can. Section 67d protects him in these rights. If the proceeds are sufficient to pay both the principal and interest of his claim, nothing in the act can be invoked to restrict such a payment.

When, however, such a secured creditor comes into the bankruptcy court asking for dividends on an unsatisfied balance, his claim ceases to be a secured claim at all, and is really an unsecured claim for the diminished amount. *Coder* v. *Arts*, 152 Fed. Rep. 943 (afterwards affirmed without considering this point in this court in 213 U. S. 223).

The bankruptcy law in fixing the date of the filing of the petition as the date at which interest shall cease, seeks to treat all creditors alike. For this purpose, some date must be selected as the common due date. The present law adopts the date of filing of the petition. See *Ex parte Bennet*, 2 Atk. 527.

In cases of insolvent banks a secured creditor cannot have interest upon his claim allowed from the assets subsequent to the date of suspension. *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. Rep. 378, 379; *Merrill* v. *Nat. Bank*, 173 U. S. 131, 140, 141; *White* v. *Knox*, 111 U. S. 784, 787. *Hiscock* v. *Varick Bank*, 206 U. S. 28, does not apply.

A secured creditor cannot evade the provisions of the bankruptcy law forbidding the allowance of interest, accruing subsequent to petition filed, by applying the proceeds of his security first to the payment of interest. *In re Bonacino*, 1 Manson, 59.

The long established rule of the English courts of bankruptcy forbids the application by secured creditors of the proceeds of security to interest accruing after the date of the commencement of bankruptcy proceedings, if such creditors after the liquidation of the securities claim divi-

dends on an unpaid balance. *Ex parte Wardell,* 1787; *Ex parte Hercy,* 1792, cited in Cooke's Bankruptcy Law, 4th ed., 1799, p. 181; see also 2 Montague & Ayrton, Appendix A; *Ex parte Badger,* 4 Ves. 165, decided in 1798; *Ex parte Ramsbottom,* 2 Montague & Ayrton, 80; see also *In re Savin,* Law Rep. VII, Chan. App. Cas. 760; *Quartermaine's Case,* [1892], 1 Ch. Div. 639; *In re Bonacino,* 1 Manson, 59; *Ex parte Lubbock,* 9 Jur. (N. S.) Pt. 1, 854.

The dividends or interest collected on the security subsequent to the date of the receiving order should not be applied against interest after that date notwithstanding the ruling in *In re Penfold,* 4 DeG. & Sm. 282, and *Ex parte Ramsbottom,* 2 Mont. & A. 80; see *In re Quartermaine* [1892], 1 Ch. Div. 639.

*Mr. Frederic R. Coudert,* for appellees in No. 662.

The cases on which appellant relies are certain English adjudications which are inconsistent, illogical, unsound and hence non-persuasive. *In re Talbott (King v. Chick)* cited in *In re Savin,* 7 Chan. App. 761.

The French law is similar to the law as laid down by the court below. See French Code Civil, § 1254; Code of Commerce, § 445, and see Credit Agricole C. Syndic Bourson, Cass. Civ. 12, July, 1876, Sirey, Lois et Arrêts (1878), p. 68, and also Société Generale C. Synd. Courtignon, Cass. Civ. 13 July, 1896, Sirey, Lois et Arrêts (1896), p. 395.

There is no reason why the British rule should prevail over the clear cut, symmetrical rule, sanctioned by the French codes and the highest French tribunal.

*Mr. Rufus W. Sprague, Jr.,* for appellee in No. 663.

The Bankruptcy Act expressly recognizes and preserves valid liens existing at the time of the filing of the petition. *Hiscock v. Varick Bank,* 206 U. S. 28. Nor does it deny to a partially secured creditor, the right under its agreement to apply the proceeds of the security first to interest ac-

cruing on the debt after the filing of the petition and up to and including the time of the sale of the collateral, then to the principal and to prove for any balance remaining. Section 63 of the act; *Story* v. *Livingston*, 13 Pet. 359, 371; *Merchants' Bank* v. *Freeman*, 15 Hun, 359.

See *Coder* v. *Arts*, 213 U. S. 223; *In re Stevens*, 173 Fed. Rep. 842; *In re Haake*, 11 Fed. Cases, 134; *S. C.*, 2 Sawy. 231, to effect that if the security is sufficient to pay in full all interest accruing (subsequent to the filing of the petition in bankruptcy and up to the time of the sale of the collateral) as well as the principal of the debt, the creditor would be entitled to retain from the sale of the collateral an amount sufficient to pay all such interest as well as the entire principal and would be obligated to turn over to the trustee only such balance as might remain after such application of the proceeds from the sale of the security.

The right of a partially secured creditor to take his interest and prove for the balance due seems to have been taken for granted in *In re Peacock*, 178 Fed. Rep. 851; *McHenry* v. *La Société Francaise*, 95 U. S. 58; *In re Strachen*, Fed. Case No. 13,519; *In re Kallak*, 147 Fed. Rep. 276; *In re Scheidt Bros.*, 177 Fed. Rep. 299.

The Bankruptcy Act provides a remedy if a secured creditor unreasonably delays in the liquidation of the security held by him. *Hiscock* v. *Varick Bank*, 206 U. S. 28, 40; *In re Mertens*, 144 Fed. Rep. 818.

As to the power of the court under § 57h fixing the value of the security, see *In re Davison*, 179 Fed. Rep. 750; and to prevent fraudulent exercise of a power of sale of pledged property by a secured creditor see *In re Browne*, 104 Fed. Rep. 762.

The delay in selling the security in this case was with the consent of the trustee, and the English rule has no application. *Ex parte Ramsbottom*, 2 Montague & A. 79.

The English decisions have approved other exceptions to

the rule relied upon by appellant, viz.: When the assignee disputes the security interest is allowed to the claimant. *Ex parte Pollard*, 1 Mont. D. & D. 264. When there are two debts, the one provable, the other not, and the security was given to cover debts in general, the security may be applied in payment of the debts not provable. *Ex parte Kensington*, 2 M. & A. 300, 304. The income of the security earned since the bankruptcy may be set off against interest on the debt accrued for the same period. *Ex parte Penfold*, 4 De Gex & Smale, 282.

MR. JUSTICE HOLMES delivered the opinion of the court.

In both of these cases secured creditors selling their security some time after the filing of the petition in bankruptcy and finding the proceeds not enough to pay the whole amount of their claims, were allowed by the referee to apply the proceeds first to interest accrued since the filing of the petition, then to principal, and to prove for the balance. The referee certified the question whether the creditors had a right to the interest. The District Judge answered the question in the affirmative, giving the matter a very thorough and persuasive discussion, and declining to follow the English rule. *In re Kessler*, 171 Fed. Rep. 751. On appeal his decision was affirmed by a majority of the Circuit Court of Appeals. 180 Fed. Rep. 979.

The argument certainly is strong. A secured creditor could apply his security to interest first when the parties were solvent, *Story* v. *Livingston*, 13 Pet. 359, 371, and liens are not affected by the statute. Section 67*d*. The law is not intended to take away any part of the security that a creditor may have, as it would seem at first sight to do if the course adopted below were not followed. Some further countenance to that course is thought to be found in § 57*h*, which provides that the value of securities shall

be determined by converting them into money 'according to the terms of the agreement,' for it is urged that by construction the right to apply them to interest is as much part of the agreement as if it had been written in. Nevertheless it seems to us that on the whole the considerations on the other side are stronger and must prevail.

For more than a century and a half the theory of the English bankrupt system has been that everything stops at a certain date. Interest was not computed beyond the date of the commission. *Ex parte Bennet*, 2 Atk 527. This rule was applied to mortgages as well as to uns cured debts; *Ex parte Wardell*, 1787; *Ex parte Hercy*, 1 92, 1 Cooke, Bankrupt Laws, 4th ed., 181; (1st ed., Appendix), and notwithstanding occasional doubts it has been so applied with the prevailing assent of the English judges ever since. *Ex parte Badger*, 4 Ves. 165. *Ex parte Ramsbottom*, 2 Mont. & Ayrt. 79. *Ex parte Penfold*, 4 De G. & Sm. 282. *Ex parte Lubbock*, 9 Jur. N. S. 854. *In re Savin*, L. R. 7 Ch. 760, 764. *Ex parte Bath*, 22 Ch. Div. 450, 454. *Quartermaine's Case* [1892], 1 Ch. 639. *In re Bonacino*, 1 Manson, 59. As appears from Cooke, *sup.*, the rule was laid down not because of the words of the statute but as a fundamental principle. We take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us when we copied the system, somewhat as the established construction of a law goes with the words where they are copied by another State. No one doubts that interest on unsecured debts stops. See § 63 (1). *Board of County Commissioners* v. *Hurley*, 169 Fed. Rep. 92, 94.

The rule is not unreasonable when closely considered. It simply fixes the moment when the affairs of the bankrupt are supposed to be wound up. If, as in a well known illustration of Chief Justice Shaw's, *Parks* v. *Boston*, 15 Pick. 198, 208, the whole matter could be settled in a

day by a pie-powder court, the secured creditor would be
called upon to sell or have his security valued on the spot,
would receive a dividend upon that footing, would suffer no
injustice, and could not complain. If, under § 57 of the
present act, the value of the security should be determined
by agreement or arbitration the time for fixing it naturally
would be the date of the petition. At that moment the
creditors acquire a right *in rem* against the assets. *Chem-
ical National Bank* v. *Armstrong*, 59 Fed. Rep. 372, 378,
379 *Merrill* v. *National Bank of Jacksonville*, 173 U. S.
131, 140. When there is delay in selling because of the
hope of getting a higher price it is more for the advantage
of the secured creditor than of any one else, as he takes
the whole advance and the others only benefit by a per-
centage, which does not seem a good reason for allowing
him to prove for interest by indirection. Whenever the
creditor proves, his security may be cut short. That is the
necessarily possible result of bankruptcy. The rule under
discussion fixes the moment in all cases at the date which
the petition is filed, but beyond the fact of being compelled
to realize his security and look for a new investment there
is no other invasion of the secured creditor's contract
rights, and that invasion is the same in kind whatever mo-
ment may be fixed.

It is suggested that the right of a creditor having se-
curity for two claims, one provable and the other unprov-
able, to marshal his security against the unprovable claim,
(see *Hiscock* v. *Varick Bank*, 206 U. S. 28, 37), is inconsist-
ent with the rule applied in this case. But that right is
not affected by fixing a time for winding up, and the
bankruptcy law does not touch securities otherwise than
in this unavoidable particular. The provision in § 57*h* for
converting securities into money according to the terms
of the agreement has no appreciable bearing on the ques-
tion. Apart from indicating, in accordance with § 67*d*,
that liens are not to be affected, it would seem rather to

be intended to secure the right of the trustees and general creditors in cases where the security may be worth more than the debt. The view that we adopt is well presented in the late Judge Lowell's work on Bankruptcy, § 419; seems to have been entertained in *Coder* v. *Arts*, 152 Fed. Rep. 943, 950, (affirmed without touching this point, 213 U. S. 223), and is somewhat sustained by analogy in the case of insolvent banks. *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131, 140. *White* v. *Knox*, 111 U. S. 784, 787.

ꞵ Interest and dividends accrued upon some of the securities after the date of the petition. The English cases allow these to be applied to the after accruing interest upon the debt. *Ex parte Ramsbottom*, 2 Mont. & Ayrton, 79. *Ex parte Penfold*, 4 De G. & Sm. 282. *Quartermaine's Case* [1892], 1 Ch. 639. There is no more reason for allowing the bankrupt estate to profit by the delay beyond the day of settlement than there is for letting the creditors do so. Therefore to apply these subsequent dividends, &c., to subsequent interest seems just. ꞵ

*Decrees reversed.*