**In re Edekawa BROWN, Debtor.**

**Drive Financial Services, Movant,**

**v.**

**Edekawa Anyu Brown and James H. Bone, Trustee, Respondents.**

**No. 05–86731.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

July 25, 2006.

---

**10.** *See Docket No. 1, Schedules I & J.*

Craig B. Lefkoff, Esq., Lefkoff, Rubin & Gleason, PC, Atlanta, GA, for Plaintiff/Petitioner/Movant.

Richard H. Thomson, Esq., Clark & Washington, PC, Atlanta, GA, for Defendant/Respondent.

Mary Ida Townson, Esq., Atlanta, GA, Chapter 13 Trustee.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

In this Chapter 13 case, Drive Financial Services ("Drive Financial") has two objections to the manner in which pre-confirma-

tion adequate protection payments are being handled. Drive Financial argues that the debtor must make the adequate protection payments directly to Drive Financial and that these payments cannot be administered by the Chapter 13 Trustee. Drive Financial also argues that the pre-confirmation payments cannot be applied only to reduce the principal amount of the creditor's claim, but must be applied to both interest and principal. These objections were raised at the confirmation hearing as objections to plan confirmation, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L). This case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 (2005) ("BAPCPA").

## I. A Context for Understanding the Legal Issues Raised By Drive Financial's Objections

Before reciting the facts of this case, it is useful to explain some basic but not intuitive legal concepts relevant to the dispute. Chapter 13 bankruptcies have been a part of American bankruptcy law for several decades.[1] In simple terms, individuals with regular income propose a plan of between three and five years in which they make regular payments to a Chapter 13 Trustee who in turn disburses payments to creditors with allowed claims. Many individuals file for relief under Chapter 13 after they have fallen behind on house payments or car payments in the hopes of being able to retain the house or the car. If all goes well, a plan is confirmed and after all plan payments are made, the debtor receives a discharge of some of his or her debts. This of course is an over-simplification, as the sections of the Bankruptcy Code that relate to Chapter 13 cases are actually quite complex. Several provisions in and applicable to Chapter 13 were changed by BAPCPA, and this case concerns those changes that require adequate protection for certain secured creditors prior to plan confirmation.

Chapter 13 plans and payments are administered by what are called Standing Chapter 13 Trustees, who are appointed by the United States Trustee for the appropriate region. 28 § 586(b). The efficacy of this Chapter 13 program in which billions of dollars are annually disbursed to creditors depends in large part on the ability of the Standing Chapter 13 Trustees to administer a high volume of cases.[2] Following BAPCPA, this District developed a Chapter 13 plan form to accommodate the changes by BAPCPA.

Three sections of the Bankruptcy Code are pertinent to Drive Financial's objections:

1. Section 1326(a), which governs payments in Chapter 13 cases. Section 1326 is titled "Payments," and the subsections at issue here include § 1326(a)(1)(A), (a)(1)(C), (a)(2) and (a)(3);

---

**1.** *See* Timothy W. Dixon & David G. Epstein, *Where Did Chapter 13 Come From and Where Should It Go?* 10 Am. Bankr.Inst. L.Rev. 741 (2002) for a fascinating discussion of the history of Chapter 13 as it began in Birmingham, Alabama in the 1930's with wage-earner plans and was codified to Chapter XIII in the Chandler Act, the Bankruptcy Act of 1938. Congress then passed the Bankruptcy Reform Act of 1978 and with it the provisions of Chapter 13 (as opposed to XIII), many of which have been changed by BAPCPA, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**2.** For the year ending September 2005, the Chapter 13 Standing Trustees collected $5,438,800,852 from Chapter 13 debtors. U.S. Dept. Of Justice, U.S. Trustee Program, Chapter 13 Standing Trustee FY05 Audited Annual Report 1 (rev.6/22/06), *http://www.usdoj.gov./ust/eo/private trustee/library/chapter13/docs/ FY05_Annual_Report_Revised.pdf*(last visited July 19, 2006).

2. Section 1325(a)(5)(B)(ii) and the hanging paragraph at the very end of § 1325(a) which follows § 1325(a)(9). Section 1325 is titled "Confirmation of Plan," and these portions of the section address treatment for allowed secured claims and, in particular, allowed secured claims held by creditors with purchase money security interests on motor vehicles acquired for personal use within 910 days before the bankruptcy was filed; and

3. Section 361 titled "Adequate Protection." BAPCPA materially amended §§ 1325 and 1326 but did not change § 361. For ease of reference, the pertinent portions of these provisions are reprinted below, and the portions of § 1326(a) discussed in this opinion are italicized.

## § 1326. Payments

(a)(1) *Unless the court orders otherwise, the debtor shall commence making payments* not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, *in the amount—*

(A) *proposed by the plan to the trustee;*

(B) scheduled in a lease of personal property directly to the lessor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment; and

(C) *that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by*

*the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.*

(2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. *If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor,* after deducting any unpaid claim allowed under section 503(b).

(3) Subject to section 363, *the court may,* upon notice and a hearing, *modify,* increase, or reduce *the payments required under this subsection pending confirmation of a plan.*

(4) Not later than 60 days after the date of filing of a case under this chapter, a debtor retaining possession of personal property subject to a lease or securing a claim attributable in whole or in part to the purchase price of such property shall provide the lessor or secured creditor reasonable evidence of the maintenance of any required insurance coverage with respect to the use or ownership of such property and continue to do so for so long as the debtor retains possession of such property.

## § 361. Adequate protection

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this

title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

## § 1325. Confirmation of plan

(a) Except as provided in subsection (b) the court shall confirm a plan if—...

(5) with respect to each allowed secured claim provided for by the plan—

...

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim

...

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day preceding the date of the filing

of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing[.]

In BAPCPA, Congress made significant changes to § 1326, and the statute now differentiates between plan payments made to the Chapter 13 trustee and pre-confirmation adequate protection payments made to a secured creditor. Specifically, § 1326(a)(1) provides that within 30 days of the filing, the debtor shall begin making payments in the amount proposed by the plan to the trustee (§ 1326(a)(1)(A)) and payments in the amount that "provides adequate protection directly to a creditor holding an allowed secured claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief...." (§ 1326(a)(1)(C)). In plainer English, a creditor such as Drive Financial with an allowed claim secured by a purchase money security interest is entitled to adequate protection for the period of time between the filing of the case and the confirmation or dismissal of the case. This should be a relatively short period of time, because under § 1324 as revised by BAPCPA, in most cases, the confirmation hearing will be held between twenty (20) and forty-five (45) days after the meeting of creditors under § 341(a).[3]

---

**3.** Before BAPCPA, § 1324 was silent on the timing of the confirmation hearing. This led to a variety of local practices. In some districts, courts waited to hold confirmation hearings until after the deadline for filing proofs of claim had passed, believing that it was difficult to confirm a plan without understanding which creditors had claims in what amounts. Under Rule 3002 of the Federal Rules of Bankruptcy Procedure, with some exceptions, the bar date for filing proofs of claim in Chapter 13 cases is 90 days after the first date set for the § 341 meeting of creditors. In other districts, courts held confirma-

The form of the Chapter 13 plan used in this District contains the following provision for pre-confirmation adequate protection payments on claims secured by personal property which the debtor intends to retain:

6. **Secured Claims.**

(A). **Claims Secured by Personal Property Which Debtor Intends to Retain.**

(i). *Pre-confirmation adequate protection payments.* No later than 30 days after the date of the filing of this plan or the order for relief, whichever is earlier, the Debtor shall make the following adequate protection payments to creditors pursuant to § 1326(a)(1)(C). If the Debtor elects to make such adequate protection payments on allowed claims to the Trustee pending confirmation of the plan, the creditor shall have an administrative lien on such payment(s), subject to objection. If Debtor elects to make such adequate protection payments directly to the creditor, Debtor shall provide evidence of such payment to the Trustee, including the amount and date of the payment.

Debtor shall make the following adequate protection payments:

_____ directly to the creditor; or

_____ to the Trustee pending confirmation of the plan.

| (a) Creditor | (b) Collateral | (c) Adequate protection payment amount |
|---|---|---|
|  |  |  |
|  |  |  |

The form gives debtors a c.,ice of whether to make pre-confirmation adequate protection payments directly to the secured creditor or to the Chapter 13 Trustee for disbursement to the secured creditor in which case the creditor has an administrative lien on such payments.

II. The Facts of This Case

Now we come to the facts in this case. Edekawa Anyu Brown filed a petition for relief under Chapter 13 of the Bankruptcy Code on December 28, 2005. Drive Financial is a secured creditor with a claim secured by a 1999 Mercedes E-class automobile (the "vehicle"). The balance owing on the claim is $19,165.50. The installment contract applicable to the claim provides for interest at the rate of 23.95%. Drive Financial filed its proof of claim on January 10, 2006.

The debtor is a 29 year old single mother of four minor children. She is a medical records assistant at Crawford Long Hospital and has worked at Crawford Long Hospital for approximately five years. The vehicle in question is the debtor's only vehicle.

According to Drive Financial's proof of claim, the value of the vehicle on the petition date was $17,500.00. Debtor's counsel represents that the NADA Guide shows the current value of the vehicle to be approximately $15,000.00, and debtor's schedules value the vehicle at $14,800.00. Under any of these three possible valuations offered, Drive Financial's claim is more than the value of the vehicle securing the claim.

The contract between the debtor and Drive Financial was entered into within 910 days of the filing of this Chapter 13 case. Thus, under the hanging paragraph at the end of § 1325(a), the claim cannot be bifurcated between its unsecured and

tion hearings prior to the claims deadline, believing there were advantages to having creditors who had filed proofs of claim paid earlier. In the Northern District of Georgia, the Bankruptcy Court has scheduled early confirmation hearings prior to the claims deadline for at least the last 17 years.

secured portions. Debtor recognizes this, as debtor's amended plan proposes to pay Drive Financial over time the entire amount of its allowed claim by paying the value of the claim as of the effective date of the plan.

Debtor's amended plan calls for monthly payments to the Chapter 13 Trustee in the amount of $625.00 a month. As described above, Paragraph 6(A) of the form plan deals with claims secured by personal property which the debtor intends to retain. Debtor proposes to retain the vehicle. The plan calls for the debtor to make adequate protection payments on Drive Financial's claim by making payments in the amount of $325.00 per month until confirmation of the plan. As explained above, the plan form provides that the debtor can choose to make adequate protection payments on allowed claims either to the Trustee pending confirmation or directly to the creditor. If the payments are made directly to the Trustee, then the plan provides that the creditor has an administrative lien on these payments. Debtor's plan proposes to make the adequate protection payments to the Trustee, rather than directly to Drive Financial, pending confirmation of the plan. After confirmation, the proposed monthly payments for Drive Financial are $325.00 a month until September, 2006, after which the payment will be increased to $475.00 a month until the allowed secured claim is paid in full. The debtor proposes a 10% per annum interest rate on Drive's allowed secured claim.

Drive Financial has not challenged the amount of the adequate protection payment, nor has it presented any evidence or argument with respect to any amount of

depreciation in the vehicle's value during the approximately 3½ months between the petition date and the confirmation date. Debtor has not objected to Drive Financial's proof of claim.

At the confirmation hearing held on April 11, 2006, the Trustee reported that the debtor was current on her payments and that the amended plan met the requirements for confirmation. Drive Financial, however, orally raised two objections with regard to the handling of the pre-confirmation adequate protection payments. The Court entered an Order on April 12, 2006 confirming the debtor's plan so that the Trustee could begin making disbursements, but reserving a ruling on Drive Financial's objections pending the submission of briefs, with the understanding that, to the extent Drive Financial prevailed, payments could be adjusted in accordance with the Court's ruling. Drive Financial filed its brief on May 31, 2006, and debtor's counsel and the Chapter 13 Trustee filed responsive briefs on June 20 and June 27, respectively. In addition, attorney Richard Lee submitted a brief on June 15, 2006, presumably as an amicus brief in support of the debtor's plan and the Chapter 13 Trustee's practice in this District. The three months of pre-confirmation adequate protection payments for Drive Financial total $975.00, and the Court has been advised that the Trustee has disbursed the adequate protection payments to Drive Financial.[4]

### III. The Legal Analysis

A. Can the Court confirm a Chapter 13 plan in a case where the debtor proposes to make pre-confirmation adequate protec-

---

4. On July 12, 2006, Drive Financial filed an amended motion for relief from the automatic stay and the co-debtor stay in which it complains about other aspects of the Chapter 13 Trustee's handling of adequate protection and plan payments. Drive Financial scheduled said motion for hearing on August 15, 2006. In this opinion, the Court addresses only the two legal issues briefed by the parties. The additional concerns raised by Drive Financial in its July 12, 2006 motion will be heard at the scheduled hearing.

tion payments to the Chapter 13 Trustee for disbursement to the secured creditor?

■ Drive Financial argues that in expanding the types of payments to be made by a Chapter 13 debtor, § 1326(a) requires that the debtor make adequate protection payments directly to the secured creditor. Drive Financial argues that the "unless the court orders otherwise" language at the beginning of § 1326(a)(1) only gives the court discretion to alter the timing of payments and that the court has no discretion to allow the debtor to send the adequate protection payments to the Chapter 13 Trustee for disbursement to the secured creditor. Finally, Drive Financial argues that § 1326(a) taken as a whole means that the Chapter 13 Trustee does not have "legal authority" to retain and administer payments under § 1326(a)(1)(C).

Drive Financial's construction of § 1326(a) is unnecessarily rigid. First, § 1326(a)(1) begins with the language "unless the court orders otherwise." That language precedes all of § 1326(a)(1) and allows a court to revise the requirement that the debtor make pre-confirmation payments directly to a secured creditor. *See In re Beaver,* 337 B.R. 281, 284 n. 2 (Bankr.E.D.N.C.2006). Second, § 1326(a)(3) states that the court may, upon notice and a hearing, *modify,* increase, or reduce the payments required under § 1326(a) pending confirmation of a plan. Thus, a court may modify payments called for under § 1326(a)(1)(C). Third, § 1326(a)(2) states that the Chapter 13 Trustee will not return to the debtor any payments if those payments are due and owing to creditors. Under this language, pre-confirmation adequate protection payments made by a debtor to the Chapter 13 Trustee for disbursement to a specific creditor as is the case with Ms. Brown's payments are payments that could not be returned to the debtor. Thus, § 1326(a)(2) contemplates that the Chapter 13 Trustee might administer adequate protection payments.[5] Considering the prefatory "unless the court orders otherwise" language in § 1326(a)(1) and the provisions of § 1326(a)(2) and (a)(3), the Court concludes that it can confirm a plan where the debtor makes pre-confirmation adequate protection payments to the Chapter 13 Trustee for disbursement to the secured creditor pending confirmation or dismissal of the case.

This construction of § 1326(a) is consistent with legislative intent. BAPCPA was passed with the intent of preventing certain perceived abuses of the bankruptcy laws. One such abuse arose in some Chapter 13 cases where a debtor might retain and use a vehicle subject to a security interest for several months, until the case came before the court for confirmation. Under pre-BAPCPA, if the plan was not confirmed and the case was dismissed, all the payments made to the trustee with the exception of certain administrative expenses would be returned to the debtor. The secured creditor would not receive any of the payments and would be harmed by the amount of the uncompensated depreciation of the creditor's collateral. The BAPCPA amendments to § 1326(a) which require pre-confirmation adequate protection payments for certain secured creditors stop that abuse. Now, under BAPCPA, for certain secured creditors, the debtor *must provide adequate protection* for the period between the filing and confirmation and if a plan is not confirmed and the case is dismissed, the creditor

---

**5.** *See* 8 *Collier on Bankruptcy* ¶ 1326.02[2][c] at 1326–12 (15th ed. rev.2005) ("Under language added in 2005, the trustee is also to deduct any unpaid adequate protection payments that are due and owing to creditors under § 1326(a)(3)").

receives and keeps the adequate protection payments.

The words "adequate protection" have a special meaning in bankruptcy law. Section 361 of the Bankruptcy Code is devoted to the topic of adequate protection. Section 361 appears in Chapter 3, and pursuant to § 103(a) of the Bankruptcy Code, Chapter 3, along with Chapters 1 and 5, apply to cases under Chapter 13. Section 361 allows for various alternatives for providing adequate protection. What the debtor has provided in her plan in this case is a lien on earmarked payments made to the Chapter 13 Trustee.

■ *Beaver*, 337 B.R. 281, decided by Judge Thomas Small, supports the debtor's and the Chapter 13 trustee's positions. There, the secured creditor contended that adequate protection payments required under § 1326(a)(1)(C) must be paid directly to it by the debtors. The debtors maintained that they could provide adequate protection by means other than direct payments, and the court agreed. The court interpreted § 1326(a)(1)(C) to mean that direct payments are unnecessary if the debtor has chosen another method of providing adequate protection. The court ruled that, under § 361, adequate protection payments may be made by "cash payments, replacement liens, or 'such other relief' as would 'result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.' 11 U.S.C. § 361(3)." *Id.* at 284. The court reasoned that had Congress intended to change the well established process and practice of affording debtors a wide range of options to provide adequate protection, it could and would have done so more clearly. *Id.* at 285. This Court agrees with the conclusion in *Beaver* that "[a] plan that provides for the payment of the secured claim over the life of the plan and also provides that a portion of each pre-confirmation payment will be distributed to the secured creditor in the event the plan is not confirmed and the case is dismissed may provide adequate protection without the necessity of pre-confirmation payments to the secured creditor." *Id.*

Practical considerations and ease of administration provide compelling reasons why courts might permit debtors to make the pre-confirmation adequate protection payments to the Chapter 13 Trustee for disbursement to secured creditors. The briefs submitted elaborate on the accounting difficulties and burdens created for all parties if the Chapter 13 Trustee were prohibited from administering § 1326(a)(1)(C) payments. Some of the most respected names in the field recognize that requiring debtors to make payments directly to secured creditors will create administrative problems. Judge William Houston Brown and Lawrence R. Ahern, III have commented on § 1326(a):

> Unless a practical solution is found, *the payments directly to lessors and secured creditors will create administrative problems.* How would such payments be accounted for and would those creditors be required to amend their claims to reflect the payments received from the debtor? How will the debtor deal with disputes about the amount of the claim when the trustee does not have records of payments made and is not the disburser of those payments?

William Houston Brown & Lawrence R. Ahern III, *2005 Bankruptcy Reform Legislation with Analysis* 47 (2005) (emphasis added).

Henry E. Hildebrand, III, the Standing Chapter 13 Trustee in the Middle District of Tennessee and one of the leading writers and speakers on Chapter 13 administration and practice, writes:

> *The concept of debtors making adequate protection payments directly to secured*

*creditors raises enormous problems.* BAPCPA permits such direct payments only to creditors holding "an allowed claim secured by personal property." An allowed secured claim is a secured claim for which a proof of claim has been filed. The restriction to "allowed claims" would compel close monitoring of the court claims register to determine when and if such direct payments can be made. Consumer debtors have a rather poor record of maintaining adequate records of payments. The imposition of a new record-keeping requirement on debtors to provide adequate evidence of payments, including amounts of the payments and the dates paid to the trustee may be expecting too much.

Henry E. Hildebrand, III, *Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 on Chapter 13 Trustees,* 79 Am. Bankr.L.J. 373, 379 (2005) (emphasis added).

Finally, recognizing the significant practical problems presented by having debtors make direct payments to secured creditors, a number of courts have "ordered otherwise." The Chapter 13 Trustee points out in his brief that bankruptcy courts in Florida, Illinois, California, Missouri, Texas and Arkansas entered general orders after the passage of BAPCPA specifically allowing debtors to make pre-confirmation adequate protection payments directly to the Chapter 13 Trustee rather than to the secured creditors and allowing the Chapter 13 Trustee to administer the payments.[6]

In conclusion, the plan used by the debtor in this case and by the great majority of debtors in the Northern District of Georgia pursuant to which Ms. Brown elected to make pre-confirmation adequate protection payments to the Chapter 13 Trustee for disbursement to Drive Financial complies with § 1326(a). Here, the plan was confirmed, and the Trustee forwarded the adequate protection payments to Drive Financial. If the plan had not been confirmed, the Trustee would still have been required to forward the adequate protection payments to Drive Financial. Thus, Drive Financial was adequately protected for the period between the filing of the case and the confirmation or the dismissal of the case. This plan and the election made by Ms. Brown are consistent with the language of § 1326(a), the intent of Congress in affording protection to car creditors such as Drive Financial, and the practicalities of administering Chapter 13 cases.

**B.** Should the adequate protection payments be applied to reduce the claim of the secured creditor or is the creditor entitled to have the payment first applied to interest accrual on the claim?

■ Drive Financial argues that the language of § 1326(a)(1)(C) requires that the adequate protection payment be applied first to interest and then to principal in order to protect the creditor from nonpayment. Drive Financial contends that the words "for that portion of the obli-

---

**6.** *See* (1) Administrative Order 05–6 of the United States Bankruptcy Court for the Southern District of Florida; (2) Standing Order for Chapter 13 Pre-confirmation Adequate Protection Payments in the United States Bankruptcy Court for the Northern District of Illinois; (3) Amended Standing Order Concerning All Chapter 13 Cases, General Order 2006–01 of the United States Bankruptcy Court for the Northern District of Texas, pages 4–6; (4) 2005 Standing Order No. 1, Pre–Confirmation Adequate Protection Payments of the United States Bankruptcy Court for the Western District of Missouri; (5) Procedures for Pre-confirmation Adequate Protection Payments in the Bankruptcy Court for the Northern District of California, Oakland Division; and (6) General Order No. 26 of the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

gation that becomes due after the order for relief" modify adequate protection and that the type of adequate protection required in § 1326(a)(1)(C) is different than the type of adequate protection referred to in § 361. The argument is that § 361 refers to adequate protection of "an interest of an entity in property" and that language does not appear in § 1326(a)(1)(C). Furthermore, § 361 refers to adequate protection required in §§ 362, 363, or 364 and makes no reference to § 1326(a)(1)(C).

The dollar amount involved in this one case is not large. At the confirmation hearing, the Court asked counsel to calculate the dollar difference over the life of the plan if the adequate protection payments were applied to both interest and principal as opposed to just principal. The parties agreed that the difference amounts to $558.16. In other words, the debtor would have to pay an additional $558.16 if the payments were applied as requested by Drive Financial.

■ Drive Financial's argument is interesting, but it is not convincing when applying principles of statutory construction. All parties would agree that the place to start with statutory construction is to look at the so-called "plain meaning." The problem here is that there is no plain meaning to be found in § 1326(a)(1)(C) with regard to whether the adequate protection payment should include an interest component. "Plain" means clearly evident, easily understood, uncomplicated and simple. The words used in § 1326(a)(1)(C) are not clearly evident, nor are they easily understood, uncomplicated, or simple. While Drive Financial is correct that § 361 and § 1326(a)(1)(C) are not cross-referenced, the words used in § 1326(a)(1)(C) do not clearly state what is to be adequately protected. Commentators find the language confusing. Addressing the lan-

guage that adequate protection payments need only be provided for the portion of the claim that becomes due after the order for relief, a leading treatise states, "Does this mean that no adequate protection needs to be provided for any arrears portion of the claim?" *Collier, supra,* at 1326–8. Hildebrand describes the language of § 1326(a)(1)(C) as "puzzling" and notes that the means by which a debtor could determine what provides adequate protection for any post-petition amounts that come due after the order for relief is "unspecified." Hildebrand, *supra,* 379 n. 25.

■ Drive Financial has not identified any legislative history giving substance to its argument. The Supreme Court wrote in *Dewsnup v. Timm (In re Dewsnup),* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), "this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." Including interest as a component of adequate protection for a secured creditor would effect a change in pre-BAPCPA practice. It also contradicts fundamental bankruptcy principles and law on this subject.

Our bankruptcy law was modeled on the English bankruptcy system. *Sexton v. Dreyfus,* 219 U.S. 339, 344, 31 S.Ct. 256, 55 L.Ed. 244 (1911). The English bankruptcy system did not permit the computation of interest beyond the date of the commission [filing]. *Id.,* (citations omitted). That has been the general rule in our bankruptcy system until an exception for an oversecured creditor became law and was codified in 11 U.S.C. § 506(b) of the Bankruptcy Reform Act of 1978. Drive Financial is not an oversecured creditor, and the par-

ties agree that § 506(b) is inapplicable, because debtor purchased the used vehicle within 910 days of filing bankruptcy. Since the Bankruptcy Reform Act of 1978, the question of adequate protection has been the subject of many pre-BAPCPA opinions. Courts have rejected the argument that adequate protection payments should contain an interest component, except in the case of an oversecured creditor which has an equity cushion. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (undersecured creditors not entitled to post-petition interest or adequate protection payments for delay caused by automatic stay in foreclosing on their collateral); *Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources* ), 54 F.3d 722, 729–30 (11th Cir.1995) (undersecured creditor not entitled to post-petition interest under § 502(b)(2) and *Timbers* ); *See also In re IPC Atlanta Limited Partnership,* 142 B.R. 547, 558 (Bankr.N.D.Ga.1992); *In re Oaks Partners, Ltd.,* 135 B.R. 440, 449–50 (Bankr.N.D.Ga.1991).

■ Past bankruptcy practice tells us that a secured creditor is adequately protected if it receives pre-confirmation payments in an amount that is equal to the amount that the collateral is depreciating. If Congress intended car creditors such as Drive Financial to receive pre-confirmation payments that included an interest component in addition to the traditional compensation for depreciation while waiting for the plan to be confirmed, it could have stated as much in the statute. The amount of the pre-confirmation adequate protection payments under § 1326(a)(1)(C) should be based on the depreciation of the collateral that occurs between the time the case is filed and the date of confirmation or dismissal and the payments should be applied to principal only. *See also Collier,*

*supra,* at 1326–8 (stating that the adequate protection provision was obviously designed primarily for car lenders and the amount of the payments presumably will "be based on the rate of the collateral's depreciation"). Hildebrand, *supra,* at 379.

Finally, applying the pre-confirmation adequate protection payments to principal does not run afoul of § 1325(a)(5)(B)(ii) or the hanging paragraph at the end of § 1325(a). Section 1325(a)(5)(B)(ii) provides that the court shall confirm a plan if with respect to each allowed secured claim provided for by the plan, the plan provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." Debtor's pre-confirmation adequate protection payments totaling $975.00 can be applied to reduce Drive Financial's claim of $19,165.50 to $18,190.50. The "effective date of the plan" is the date of confirmation which in this case was April 12, 2006. If Drive Financial receives $18,190.50 with interest as proposed in the plan, it will receive the value of the allowed claim as of the effective date of the plan.

Thus, there is no plain meaning in § 1326(a) as to how adequate protection payments should be applied, nor is there any legislative history to suggest that § 1326(a)(1)(C) payments should be applied to interest and then principal. Past bankruptcy practice supports the conclusion and the Court holds that these pre-confirmation adequate protection payments are to compensate for any depreciation in the collateral and should be applied to principal only.

In accordance with the above reasoning, Drive Financial's objections are overruled.